## WILLIAM C. TENNEY, *et al.*, v. S. N. SIMPSON.

1. LAND — *Joint Purchase — Accounting and Partition — Lien for Debt.* Where a tract of land was purchased jointly by two persons, to be subdivided and sold for profit, and not as a permanent investment, it being agreed that the legal title to the same should be taken in one of the partners, who should execute conveyances for such portions of the real estate as were sold, and the terms of purchase, method of payment, and of the sale and disposition of the land, as well as the respective interest which each was to receive, were also agreed on, and all were embodied in a writing signed by both; and where, after the purchase, and after some sales had been made, and before the enterprise was fully carried out, the party in whom the legal title was placed refused to further recognize the rights of his partner, or to execute conveyances when sales were made: *Held,* That the other partner may maintain an action for an accounting, and to determine the interest of each in the land remaining unsold, and to set off to each his respective share thereof; and any judgment rendered for a balance found due on the accounting from one partner may be declared a lien upon the share of land set off to him.

2. EXPRESS TRUST, *Embraced in Several Papers.* No particular form of expression is required to create an express trust, nor need all the terms and conditions of the trust be declared in a single writing. They may be embraced in several papers, provided they are so referred to and connected as to clearly show that they relate to the same transaction, and together clearly point out the nature and purposes of the trust.

*Error from Wyandotte District Court.*

THIS was an action to determine the rights and interest of the parties thereto to certain real estate situated in Wyandotte county, alleged to have been purchased on joint account, and for an accounting between them for the proceeds of the sale of a portion of the real estate, and to set off in severalty to each his respective share of that which remained unsold. The action was begun on January 17, 1884, and on July 6, 1885, the cause was referred to W. T. Johnston, of Paola, for trial, and to determine all issues, both of fact and of law, his report to be filed on the first day of the succeeding term. A trial

was had before the referee, and in December, 1885, he made and filed his report as follows, (court and title omitted:)

"On the 31st day of January, 1879, Jerome B. Thomas was the owner of the following-described land, situated in the county of Wyandotte, state of Kansas, to wit: the north half of the north half of the northeast quarter of the northwest quarter of section 15, township 11 south, range 25 east. On that day plaintiff S. N. Simpson and defendant William C. Tenney purchased said land from said Jerome B. Thomas through his agents, Armstrong & Moyer, at $250 per acre, aggregating $2,500; payments to be made one-half in cash, and balance in one year or less at option of purchasers, with interest at ten per cent. On that day it was agreed between S. N. Simpson and William C. Tenney that said land should be purchased in the name of William C. Tenney, who paid $100 as part payment thereon, and took a receipt therefor, as follows, to wit:

"'$100.— WYANDOTTE, KANSAS, Jan. 31, 1879.— Received of William C. Tenney one hundred dollars as part payment of ten acres of land, viz.: the north half of the north half of the northeast quarter of the northwest quarter of section 15, town 11, range 25, county of Wyandotte, state of Kansas; price $250 per acre. Half cash, balance in one year or less at the option of payor, at 10 per cent. interest.

"'In presence of S. N. SIMPSON.        J. B. THOMAS.
By Armstrong & Moyer, Agents.'

"Afterward, on the 7th day of February, 1879, plaintiff entered into a written contract with said William C. Tenney in reference to said purchase, which is in the following language, to wit:

"'Agreement between Wm. C. Tenney and S. N. Simpson, as follows: On January 31, 1879, we purchased ten acres of land of Dr. Jerome B. Thomas, through Armstrong & Moyer, land agents in Wyandotte; Wm. C. Tenney advancing one hundred dollars therefor, and to receive the deed as per conditions of agreement in receipt of that date. The profits from the sale of these ten acres to be divided as follows: Eastern parties furnishing capital are to receive their money back from sales, and in addition, twenty-five hundred dollars from the first eight thousand three hundred and thirty-three and a third dollars profit, Wm. C. Tenney receiving also twenty-five hundred dollars, and S. N. Simpson thirty-three hundred and thirty-three and a third dollars. After that Wm. C. Tenney is to receive three-tenths and S. N. Simpson seven-tenths of the net receipts of the sales of the land till S. N. Simpson shall have received one-half of all the net profits of sales of the land from the beginning of sales up to that date; and after that profits shall be equally divided between Wm. C. Tenney and S. N. Simpson. Representative of the eastern parties furnishing the money shall receive the deed of the land from Wm. C. Tenney, acting for himself and for S. N. Simpson, and continue to hold it until they shall have received back their invest-

ment and twenty-five hundred dollars as profit in addition, when it shall be deeded back to Wm C. Tenney, or his assigns, for benefit of himself and Simpson, as per above agreement.

"'KANSAS CITY, Mo., February 7, 1879.

Signed in duplicate:

WM. C. TENNEY.
S. N. SIMPSON.'

"'STATE OF KANSAS, COUNTY OF WYANDOTTE, ss.—Be it remembered, that on this 29th day of October, 1883, before me, the undersigned, a notary public in and for the county and state aforesaid, came Wm. C. Tenney, who is personally known to me to be the same person who executed the within instrument of writing, and also came S. N. Simpson, to me well known to be the same person who executed the within instrument of writing, and both of said parties duly acknowledged the execution of the same.

"'In witness whereof, I have hereto set my hand and affixed my official seal, the day and year last above written.

[Seal.]                 WM. A. SIMPSON,
*Notary Public, Wyandotte Co., Kas.*
(Com. expires 6 | 6 | 85.)'

"Said contract was duly recorded in the office of the register of deeds of Wyandotte county, Kansas. On the 5th day of February, 1879, said Jerome B. Thomas and Harriett N. R. Thomas, his wife, executed to said Wm. C. Tenney a good and sufficient warranty deed for said land, and said deed was delivered to said Tenney February 11, 1879. Afterward said Wm. C. Tenney entered into negotiations with defendant John F. Moors, which resulted in said Tenney receiving from said Moors $2,500 with which to pay the purchase-price of said land, under an agreement that said Moors should have returned to him said purchase-money and $2,500 profits, amounting to $5,000, by the first day of January, 1881, from sales of said land; and if any part of said sum should remain unpaid on the first day of January, 1881, that the same should draw interest at the rate of ten per cent. per annum until paid. To secure the payment of said sum of $5,000, as aforesaid, Wm. C. Tenney and wife executed and delivered to said John F. Moors, on the 15th day of March, 1879, a deed to said land, which was duly recorded by the register of deeds of Wyandotte county, Kansas.

"On the 14th day of May, 1879, John F. Moors and Eunice W. Moors, his wife, executed a power of attorney to Wm. C. Tenney, giving him certain powers over said land therein set forth, which was duly recorded in the records of Wyandotte county, Kansas, May 20, 1879.

"The following is a copy of said power of attorney, to wit:

"'Know all men by these presents, that John F. Moors and Eunice W. Moors, his wife, of Greenfield, Mass., have made, constituted and appointed, and by these presents do make, constitute and appoint Wil-

liam C. Tenney, of Lawrence, Douglas county, Kansas, their true and lawful attorney, for them and in their name, place and stead, to lease or bargain, sell and convey, on such terms and for such price or prices as he may accept, payable in cash or on credit, or partly in cash and partly on credit, and if on credit or partly in cash and partly on credit, and if on credit in whole or in part, payable at such time or times as he may deem advisable, all or any part or parts of the following-described lands, situate in the county of Wyandotte, in the state of Kansas, to wit: the north half of the north half of the northeast quarter of the northwest quarter of section 15, township 11, range 25 east, containing ten acres, more or less. In case of leasing, said Tenney may execute the proper written lease for and in the names of John F. and Eunice Moors, and in case of sale and conveyance, he may for them and in their names execute, acknowledge and deliver the proper contracts of sale and deeds of conveyance, inserting in the latter full covenants of warranty and the usual covenants contained in conveyances made in Kansas of lands therein; it being expected that said Tenney will from time to time sell and convey parcels of said land and he being hereby empowered to do everything in the premises necessary thereto. Said John F. and Eunice Moors hereby ratify and confirm everything their said attorney may or shall lawfully do by virtue hereof. And whereas, on the 19th day of April, 1879, there was filed in the office of the register of deeds of Wyandotte county, Kansas, a plat of certain lands, including that hereinbefore particularly described which plat lays off on said land, lots, blocks, streets, alleys and subdivisions; and whereas, said Tenney signed the name of John F. Moors to said plat and acknowledged the same to be his act and deed, and for him filed the same, to be his act and deed: now therefore said John F. Moors hereby ratifies and confirms what said Tenney has so done, and hereby declares that said plat and the signing and acknowledgment and filing thereof as aforesaid shall for all purposes have the same force and effect as if said John F. Moors had in person made, signed, acknowledged and filed the said plat.

" ' Witness the hands and seals of said John F. Moors and Eunice W. Moors, his wife, this 14th day of May, 1879.

<div style="text-align: right">JOHN F. MOORS.   [Seal.]<br>EUNICE W. MOORS.  [Seal.]</div>

" ' STATE OF MASSACHUSETTS, COUNTY OF FRANKLIN, ss.—Be it known, that on the 14th day of May, 1879, before the undersigned, a notary public in and for said county and state, came the above-named John F. Moors and Eunice W. Moors, his wife, to the undersigned personally known to be the same persons who executed the above and foregoing instrument as parties thereto, and duly acknowledged the execution of the same, and that it is their act and deed.

" ' In testimony whereof, I hereunto set my name and affix my notarial seal, the day and year first above written, at my office in said county.   [Seal.]   GORHAM D. WILLIAMS, *Notary Public.*'

"In harmony with the rights granted to them through the conveyances referred to, the contract of February 7, 1879, and the power of attorney from John F. Moors and wife to Tenney, Simpson and Tenney caused said land to be platted into streets, alleys, lots and blocks; Simpson giving special attention to the platting of the land and sales of property; Tenney executing deeds for property, receiving payment therefor, and paying expenses, until December, 1883, when he refused to

make any further settlement with Simpson, or to permit any further portion of said real estate to be sold.

"To understand my method of determining the financial status of relations existing between Tenney, Simpson and Moors, it will be necessary to refer to my conclusions of law as to the relation existing between these parties. Following these conclusions, I find that on the first day of January, 1881, there was due Moors $4,465.91, which was to draw interest at ten per cent. until paid. From that time until March 7, 1883, I charge Tenney with interest at ten per cent. on all proceeds of sales received by him. I allow him the same rate of interest on all expenses paid by him, and I charge Simpson with the same rate of interest on what he received. March 7, 1883, I find that Tenney had sufficient proceeds to pay Moors's claim, which up to that time amounted to $5,382.23, and had a balance in his hands of $27.25.

"The total amount of proceeds of sales, including interest, is $11,042.72; total amount of expense, including interest, is $577.68. One-half of the amount to which Moors is entitled, which is $2,691.11, is properly purchase-price with interest, the other half is profits with interest. If we add to the purchase-price and interest the expense and interest, and deduct the same from proceeds of sales and interest, the balance, $7,773.93, will be the net profits. One-half of this, $3,886.96, belongs to Simpson. Moors is entitled to $2,691.11 profits, which being deducted from the other half of the profits leaves $1,195.85, which is Tenney's portion of the profits. Simpson has received, including interest charged to him and notes from Mead & Hedman made to Moors, $3,829.65, which is $57.31 less than his share of profits.

"After paying expenses with interest, Moors's claim and amount, and what Simpson has received, Tenney has in his hands $1,253.16, which is $57.31 more than his portion of said profits. From these facts the conclusion is that Wm. C. Tenney is indebted to S. N. Simpson, the plaintiff, in the sum of $57.31."

"CONCLUSIONS OF LAW.

"1. That all evidence offered and heard under objection on the trial of this action as to fraud on the part of Simpson is inadmissible under the issues as joined herein, and all objections to the same are hereby sustained.

"2. That under the deed of said real estate from Thomas and wife to Tenney, Tenney received the title of the same in trust for the benefit of himself and Simpson, and that the

same is an express trust as shown by written agreement of February 7, 1879.

"3. That the deed from Tenney and wife to Moors operates as a mortgage to him to secure to him the payment of $5,000 with interest as agreed upon.

"4. That under the power of attorney from Moors and wife to Tenney, all proceeds of sales of said lands received by Tenney, and not paid out by him for expense, as to Simpson should be treated as if paid to Moors.

"5. That the sum of $2,500, which Moors was to receive as profit on the investment of $2,500 purchase-price, is not usurious interest, but is a profit to which he is entitled by reason of success of the enterprise.

"6. That Moors should receive interest at ten per cent. until paid on all that portion of said $5,000 not paid by January 1, 1881.

"7. That one-half of all said premises remaining unsold belongs to S. N. Simpson, and the other half belongs to W. C. Tenney, and the same should be set off to them in severalty.

"8. That defendant, John F. Moors, should be required to enter satisfaction upon the records of note of Susan Mead, dated October 10, 1883, for $600, bearing interest at eight per cent., and of note of E. Hedman and Ella Hedman for $375, of same date and bearing same interest, upon payment of same to S. N. Simpson, said notes being payable to said Moors, and the same being in the possession of said S. N. Simpson, and being charged to him as cash, in determining amount paid to him by Tenney.

"9. That said John F. Moors should reconvey all his right, title and interest in and to said real estate to said W. C. Tenney.

"10. That W. C. Tenney is indebted to S. N. Simpson in the sum of $57.31.

December 19, 1885.        W. T. JOHNSTON, *Referee.*"

The referee further made and filed, at the request of defendants (plaintiffs in error) answers to special questions of fact therein as follows, (court and title omitted:)

"1. Do the facts, as shown by the evidence in this cause, show or establish a 'resulting trust' in favor of the plaintiff? No.

"2. If no 'resulting trust' is established in favor of the plaintiff by the evidence, then is there any 'express trust' so established in his behalf? Yes.

"3. If the evidence shows the fact that an 'express trust'

was created in favor of the plaintiff, then was such created by parol agreement, or in writing ?   And if such written agreement created such 'express trust,' what is the date of such agreement, or if more than one such, then what are the dates of such agreements and by whom were they signed ?   Express trust created in writing, dated February 7, 1879.

"4.  If any one or more of the defendants signed any written agreement or agreements creating any 'express trust' in favor of the plaintiff, had such person at the time of so signing such written agreement the legal title to the land in question ?   And if he did not own the legal title, but owned the equitable title, what act or agreement created such equitable title in him who so signed such written agreement creating such 'express trust ?'

"The legal title to said real estate was executed to Wm. C. Tenney Feb. 5th, 1879, and delivered to him Feb. 11th, 1879.

"5.  If an 'express trust' was created in favor of the plaintiff by any one of the defendants, which defendant ?   If all the defendants created such 'express trust,' then give the dates of the different written instruments so creating such 'express trust,' and by whom signed ?

"Express trust created by Wm. C. Tenney; date of instrument creating the same, Feb. 7th, 1879.

"6.  If any 'express trust' was created in favor of the plaintiff, do you rely solely in your finding upon a written instrument so creating such 'express trust,' or do you rely partly upon parol evidence to establish the same ?   If upon a written instrument solely, then the date of the same, and by whom signed ?

"I rely on written instrument above referred to.

"7.  If you find that an 'express trust' exists in favor of the plaintiff, and that the same so exists from a written instrument, did such written instrument create such trust, or is such trust only shown, evidenced or manifested by such written instrument and the date of it and by whom signed ?

"The written instrument heretofore referred to created said trust.

"8.  Did Simpson, the plaintiff, in agreeing to have the title to the property taken in the name of the defendants, Tenney or Moors, intend to hinder, delay or defraud his creditors thereby, and if either to hinder, delay or defraud, which; and if said Simpson did not so intend, then did such act, in so taking said title in the name of any defendant, result or is it liable to result in hindering, delaying or defrauding such creditors ?   No.

"9. Do you hold that, under the issue in this cause as made by the petition and answer, it is competent to show that the plaintiff intended to defraud, hinder or delay his creditors, in agreeing to have the title to the land in question taken in the name of either of the defendants, Tenney or Moors? No.

"10. Do you find that if such intent appears by the evidence heard (no matter whether material to the issues so made, or not) that you can find in favor of a specific performance asked by the plaintiff?

"I find that no such intent appears, and make no finding as to what I would do if such intent did appear."

At the December Term, 1885, motions were made to confirm as well as to set aside the report, and grant a new trial; but the court overruled the motion to set aside the report and grant a new trial, and sustained the motion to confirm the report. Judgment was given in accordance with the findings and report of the referee, in which it was decreed that the deed executed and delivered by William C. Tenney and wife to John F. Moors was intended and should be treated as a mortgage, and that, as the debt which was thereby secured to Moors has been fully paid, Moors and wife should reconvey the real estate to William C. Tenney. It was further adjudged and decreed, that S. N. Simpson is the owner of the undivided one-half of the real estate remaining unsold, and that the same should be partitioned and set off in severalty to him, free and clear of any interest of the other parties; and in addition, that there should be set off to him a portion of the value of $57.31, the amount found due by the referee from William C. Tenney to S. N. Simpson of the proceeds of the real estate sold. Provision was made in the decree for the appointment of commissioners to partition and set off to the parties their respective interests in the real estate. The defendants excepted to the foregoing rulings and judgment, and bring the case to this court for review.

*Stevens & Stevens*, for plaintiffs in error.

*Alden & McGrew*, and *John B. Scroggs*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The evidence and findings brought up in the record make it clearly appear that the land in controversy was purchased jointly by S. N. Simpson and William C. Tenney. It was a partnership transaction, engaged in for the profits to be derived from the sale of the land after it had been subdivided and platted into lots, blocks, streets and alleys. The lucky opportunity to buy was discovered by Simpson, and negotiations for the purchase from the prior owner were carried on by him. The tract, which consisted of ten acres, was purchased on January 31, 1879, for $250 per acre, the agreement being that one-half of the price should be paid in cash, and the residue in one year or less, at the option of the purchaser, with interest on the unpaid portion at ten per cent. per annum. The money necessary for the purchase was to be procured from eastern parties, and as an inducement for them to furnish the money, they were to have a sum equal in amount to that furnished out of the first profits arising from the sale of the real estate. Tenney conducted the negotiations for the money, and procured from the defendant, John F. Moors, $2,500, upon an agreement to return that amount and $2,500 additional out of the profits of the enterprise. In accordance with the agreement, the title to the land was taken in the name of Tenney, and he conveyed it to Moors to secure the repayment of the money furnished for its purchase, and the payment of the additional $2,500 of profit. Moors and wife, by power of attorney, authorized Tenney to lease, bargain, sell or convey the land in such portions and on such terms as he deemed advisable. Simpson devoted time and special attention to the platting and sale of the land, while Tenney executed deeds for that sold, attended to the financial details by receiving payment on sales made, and to discharging the expenses and debts incurred in carrying on the enterprise. The business of the partnership was conducted without interruption until December, 1883, when Tenney refused to further recognize the rights of Simpson in the land, or to convey the same when sold.

This case is very similar to the one recently determined in this court where Tenney and Simpson were the principal parties, (*Tenney v. Simpson,* ante, p. 353; 15 Pac. Rep. 187,) and very little need be added to what was there said. It is contended here that no trust was created in behalf of Simpson by the written contract, or by the acts and agreements of the parties. We have no doubt that the writing signed by them, and set out at length in the report of the referee, created an express trust in favor of Simpson. The plan and purpose of the parties seem to have been clearly understood by them, and to have been explicitly stated in the written agreement which they executed. The writing of February 7, 1879, points out clearly the parties, the interest of each, and the nature and subject of the trust. It recites that the land was puchased by Tenney *and Simpson,* and not by Tenney alone, on January 31, 1879. It is claimed that the writing fails to describe the land with sufficient certainty to make it capable of ascertainment. This objection is untenable. In the written agreement the ten-acre tract of land purchased by the parties from Thomas is referred to as being the same tract that was described in the receipt given for the first payment on the land, and which is dated at the time of the purchase made by Tenney and Simpson from Thomas. In that receipt, which is signed by Thomas, a definite description of the ten acres is given, as well as the terms upon which it was sold. By this reference the terms and conditions of the receipt became a part of the writing which the parties signed. No particular formality is required

2. Express trust, embraced in several papers.

in the creation of a trust, nor need all the conditions of the trust be expressed in a single paper. The terms of the trust may be embraced in several papers, and it will be valid and operative if they are so referred to and connected as to clearly show that they relate to the same transaction, and together clearly point out the nature and objects of the trust. The written agreement and the receipt must therefore be taken together and treated as one instrument, and so taken they sufficiently express and define the trust. They show that although the title to the land was taken in

Tenney it was actually purchased by Tenney and Simpson jointly, not for permanent use, but to be subdivided and sold for the profits to be gained therefrom. They disclose that the money was to be obtained on the security of the land itself, and the eastern capitalists furnishing it were to be repaid out of the profits arising from the sale, and in addition to the amount furnished they were to be paid $2,500 out of the first profits arising from sales for furnishing the money. Simpson was to receive one-half of the profits derived from the enterprise, while Tenney was to receive the other half, less the profits paid to the eastern parties for furnishing the purchase-money. The land purchased was to be conveyed by Tenney, "acting for himself and for S. N. Simpson," to the eastern parties furnishing the money, who were to hold it until they received back the amount furnished and the $2,500 of profits, when they were to reconvey it to Tenney "for the benefit of himself and Simpson," in accordance with the written agreement. It is thus seen that the written contract fully identifies the land, the terms of its purchase and disposition, and that the persons interested, as well as the respective interests which each held and was to take, can be ascertained without difficulty or doubt. When Moors was paid, either directly or through his agent Tenney, the $5,000 and any interest which accrued thereon, it was his duty to reconvey to Tenney. When so reconveyed Tenney would hold the legal title in trust for the partnership—"for the benefit of himself and Simpson." We fail to see how there can be any doubt with respect to the intention of the parties, or with the nature and purposes of the trust. A great deal has been said in argument about Simpson causing the legal title to be taken in the name of Tenney for the purpose of defrauding existing creditors, and it is claimed that under § 8 of the act concerning trusts, no trust could result in his favor unless it was made to appear that the title was placed in Tenney "without any fraudulent intent." The statutory provision referred to applies, however, only where a resulting trust is claimed, and not where there is a written express trust, such as there is found to exist in the present case.

And if it were a resulting trust which was sought to be established, we hardly see how the fraudulent intent to defraud creditors, if there were such, would avail the plaintiffs in error. They were not creditors of Simpson, had no interest in, and were not in any way affected by the claims and judgments which they say existed against Simpson. The referee, however, finds that no such fraudulent intent existed, and certainly there is nothing in the record showing that Simpson dealt otherwise than openly and fairly with Tenney throughout the entire transaction.

It is further contended that the trust stated in the written agreement should not in any event be enforced, because it is inequitable and unjust. It is said that the land which was purchased for $2,500 is worth $40,000, and that by the decree Simpson is given $20,000 worth of real estate without having furnished anything toward its purchase, and without at any time having held the legal title to the same. While the profits of the enterprise were enormous, we discover nothing in the contract of the parties, or in its results, that can be regarded as unjust or inequitable as between them. The fortunate chance of buying the land was found by Simpson, and the money with which to purchase the same was found by Tenney. The land was bought and owned by both, and the purchase-money found by Tenney was obtained on the security of the land, and repaid out of the profits arising from its sale. Simpson gave time and special attention toward putting it in a salable condition by surveying and platting it, and he also devoted his time to selling and disposing of it. There was no fraud or deception practiced by Simpson, and we see nothing that may be deemed disproportionate or unjust between the shares taken by each in the enterprise, when considered in connection with what they each contributed. Although it is claimed by Tenney that the services rendered by Simpson in the transaction were inconsequential, it seems that a different estimate was placed on them when the transaction was entered into. In writing to the eastern parties with a view of inducing them to loan the

money for the purchase of the land, Tenney stated that the trade had been brought about by Simpson, and "that great wariness, skill, patience, secresy and perseverance were necessary." He stated that Simpson was to lay out and sell the land, and was to receive one-half the profits. He further said that he had earned that share, and that he was a very skillful manager, whose share of the work "was and is indispensable to my (and to your) profit." We think that Simpson was entitled to the remedy sought; that he was the real owner of an undivided one-half interest in the real estate, and as the accounting made seems not to be questioned, that the judgment and decree must be upheld except in one particular. In the accounting it is found that Tenney is indebted to Simpson in the sum of $57.31, and the court decreed that.in addition to the share of the one-half which is set off to Simpson, he shall be given such portion of the remaining half as will equal in value the amount found due to Simpson, viz., $57.31. In this there was error, as a personal judgment should have been rendered against Tenney for the amount found due on the accounting, and the judgment so rendered should have been declared a lien on that portion of the real estate set off to Tenney. To this extent the judgment and decree of the court should be modified, and when so modified it will stand affirmed. For this purpose the cause will be remanded to the district court.

All the Justices concurring.

<div style="margin-left:note">1. Partnership. purchase of land; accounting and partition; lien for debt.</div>