No. 30,059.

In re the Estate of James K. Shintaffer, Deceased; ARTHUR P. SHINTAFFER, Executor, *Appellant,* v. Z. J. BELL et al., *Appellees.*

(4 P. 2d 764.)

Opinion filed November 7, 1931.

*Ralph T. O'Neil, J. D. M. Hamilton, Barton E. Griffith* and *Maurice D. Friedberg,* all of Topeka, for the appellant.

*Walter F. Means, Lloyd S. Miller,* both of Hiawatha, *Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes, Margaret McGurnaghan, Arthur S. Brewster,* all of Topeka, *James L. Haley,* of Sabetha, and *John C. Mullen,* of Falls City, Neb., for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appeal is by an executor from a judgment of the district court refusing to approve the executor's final account, adjudging the executor to be personally liable to the estate in the sum of $35,895, and directing that the executor be not discharged until he accounts to the probate court for that sum.

James K. Shintaffer died on May 8, 1922, leaving a will. The will gave to decedent's widow a life estate in all his property, real and personal. The will then created several remainders. A specific tract of land was devised to a daughter, Mary Rebecca Spellmeir. All other real estate was devised to a son, Arthur P. Shintaffer, subject, however, to payment of the sum of $2,500 to each of four daughters, Nellie G. Bell, Bertie A. Klein, Laura Maude Wempe and Anna Grace Plamann. The residue, consisting chiefly of bank stock, government bonds, certificates of deposit, notes secured and unsecured, and money in bank, was bequeathed to the four daughters

last named. The will was probated, and pursuant to a provision in the will Arthur P. Shintaffer was appointed executor without bond. The inventory listed personal property of the value of $41,000.

In April, 1923, the daughter Nellie died, leaving a will giving her estate to her husband, Z. J. Bell, for his life, remainder to three children then minors. Two of the children have since become of age. In May, 1927, the widow of James K. Shintaffer died. Arthur P. Shintaffer made the payments required of him and became vested with full title to all real estate devised to him. The controversy relates to personalty only.

The executor filed annual accounts for each year except 1925, when he was in Nevada, getting a Reno divorce from his wife. On June 11, 1927, he filed an annual account which showed the following: "Amount invested in securities, notes and mortgages, $35,580." The annual accounts were approved by the probate court.

On March 20, 1928, the executor filed a so-called final account, showing "amount invested in securities, $34,800." Objections to the final account were filed, and pursuant to order of probate court the executor filed another stating that notes to the amount of $42,-395, which were listed, were found in a box in the Citizens State Bank of Sabetha. At that time the bank had failed. On October 16, 1928, pursuant to order of probate court, the executor filed a supplemental final account, showing notes secured and unsecured, which were listed, to the amount of $35,895. The notes were of little or no value, and the executor made no attempt to balance his account. As indicated, the probate court approved the account and the district court disapproved it.

The dissipation of the estate occurred in this way: James K. Shintaffer did business at the National Bank of Sabetha. After his death the executor transferred his account and papers to the Citizens State Bank of Sabetha, managed by F. C. Woodbury. The change from the national bank to the state bank was made because the life tenant insisted the change should be made, and the remaindermen approved. The executor authorized Woodbury to invest and reinvest funds of the estate. The executor made no attempt to supervise Woodbury's investments, and suffered Woodbury to loot the estate by substitution of worthless for sound assets. In December, 1926, and in anticipation of the death of the life tenant, the executor instructed Woodbury to make no more investments for

the estate. Woodbury disregarded the instruction, and the executor did nothing about it.

There were some conflicts in the evidence, and some oral testimony may not have been believed. The findings of fact are supported by evidence. No motion was made to strike out or to modify any finding, or to supplement the findings, and so far as this court is concerned the findings of fact embrace all the facts of the case. With the facts found, this court can apply the law.

Since the bequest of personalty to the life tenant was general, with gift over, and the will contained no direction to the contrary, the life tenant was entitled to income and profits only. (*Chase v. Howie,* 64 Kan. 320, 67 Pac. 822; *Blakely v. Blakely,* 115 Kan. 644, 224 Pac. 65.) After death of the testator the life tenant refused to take over the estate, and none of it came into her possession. All of it remained in the hands of the executor. He accounted to the probate court annually, except for one year, and he sought to be relieved from custody and responsibility by making final settlement. Therefore the fact of the executor's trusteeship of the personalty for the benefit of the remaindermen is indisputable. It is not necessary to restate here the perfectly well-known rules of law governing the conduct of one occupying such a fiduciary relationship. Those rules are necessarily austere, and may not be relaxed; and while the executor was a Woodbury dupe he may not be heard to say that he shuffled off the duties and responsibilities of his trusteeship upon Woodbury.

The court found the executor was guilty of such gross negligence and carelessness in looking after the interests intrusted to him that, while he was not actually dishonest, he was guilty of the equivalent of bad faith. In his brief the executor contends the record of the case does not sustain the finding. It is not necessary to debate the subject. The specific facts found, derived from the executor's own testimony, fully justified the court's characterization of his conduct.

The executor contends he permitted Woodbury to make investments for the estate account on the specific request, authority and assent of the beneficiaries of the will, and because of the specific request, authority and assent of the remaindermen, he is not liable to them.

The testator did business at the national bank. He had his account there, and he had papers there. When he died he had $17,000 on deposit there, in cash and on certificates of deposit. The bank

from time to time obtained loans for him, always carefully explaining the security. The widow had great animosity toward the national bank, and complained of the smallness of the net yearly income she received. She expressed determination to place the affairs and business of the estate in the hands of Woodbury, president of the state bank, and after receiving legal advice she did assert right to direct the handling of the affairs of the estate to the extent of having the estate account removed to the state bank. Following filing of the executor's first annual account she advised three of her daughters and the executor of her desire to have the affairs of the estate, including the making of investments, handled through the state bank. On November 15, 1923, she gave definite instructions to the executor to that end. The affairs in the hands of the national bank have been described, and on November 15 the affairs of the estate were removed from the national bank, were placed in the state bank, and were thereafter to be handled through the state bank. At the widow's instance the executor instructed Woodbury to invest and reinvest assets of the estate in good, sound securities.

The foregoing states all that the life tenant accomplished by way of changing banks. It is manifest Woodbury did not become in effect substitute executor and trustee, and the inescapable duty to supervise Woodbury's doings with care and diligence and in good faith rested on the executor.

What did the legatees who complained of the executor's conduct do? They agreed to the life tenant's proposition that the affairs of the estate, including the making of investments, should be handled through the state bank. They encouraged the executor to remove the estate account and securities from the national bank to the state bank, and to have Woodbury help advise the executor as to the investing of funds of the estate. They consented to the instruction to Woodbury to invest and reinvest the assets of the estate in good, sound securities. They never did authorize the executor to turn over the making of loans for the estate to Woodbury, and they never did consent to the investments which were made, or to the manner in which the executor conducted the estate.

The foregoing are the findings of the court. They do not accord with the fact basis proposed by the executor to sustain his contention of nonliability.

Besides what has just been said, when an executor enters on a course of conduct at the request of a beneficiary, or with the consent of a beneficiary, he is not through. He must act with ordinary care and prudence and in good faith in the course which he has adopted, and the authorities cited by the executor so hold. The executor prints in his brief a paragraph found in 24 C. J. at page 127. As reproduced, the paragraph is printed in this way:

"Where an executor or administrator has acted in good faith, and his course of conduct *has been requested, authorized, or assented to by the heirs or distributees, with knowledge of all the material facts, this may excuse him from any liability to them for resulting losses, even though he has deviated from the line of his duties.*"

The italics are misplaced. The words "where an executor or administrator has acted in good faith" are the words which should have been italicized. In this instance the recklessness with which the executor virtually abandoned exercise of his functions was equivalent to bad faith.

The executor invokes estoppel against the complaining legatees. There is no basis for estoppel in the facts which have been discussed. The only additional facts found are these: The remaindermen knew the general situation, and acquiesced in the executor's method of handling the estate. The annual reports of the executor showed funds of the estate were being invested in securities other than those which made up the estate when the inventory was filed. The remaindermen knew, or could have known, that the new loans were being made, mostly on personal security. They knew the estate account was kept at the state bank, and that loans were being made. They did not know the particulars as to loans or security, or know the extent to which Woodbury had gone in handling the funds of the estate.

The legatees did not take charge of this estate and virtually manage it themselves. They were partly responsible for the change from the national bank to the state bank, but the losses did not result from the change, or from the failure of the state bank. The worthless securities standing for sound assets of the estate were all in a box in the state bank when it failed. The loss resulted from the gross misconduct of the executor, who abdicated management to Woodbury without oversight, and the executor is not in position to invoke equitable estoppel. He was not misled to his prejudice. While the legatees consented to investment by Woodbury in good,

sound securities, they never did consent that the executor should abandon investment and reinvestment to Woodbury, never did consent to the making of the investments which were made, and never did consent to the manner in which the affairs of the estate were conducted. Neither does it lie in the mouth of the executor to say to the remaindermen, you cannot recover because you ought to have stopped me sooner. Supervision was his, not theirs, and while they had much information, they did not know the particulars of loans and securities, and were ignorant of the extent to which Woodbury had gone in handling the funds of the estate.

The executor stresses the annual settlements approved by the probate court. Annual settlements are not strictly settlements. They are *ex parte* exhibitions of accounts, without notice even by publication. When approved, they are of *prima facie* correctness only, unless there is contest and actual adjudication. In this instance, from interest items and lists attached to the annual accounts, it was inferrable funds of the estate were from time to time being converted into securities other than those contained in the inventory with which the executor was charged. Conceding but not deciding that approval of an annual account was *prima facie* an adjudication that the executor was entitled in balancing his account to credit for the new securities, the statute expressly provides that at any settlement of account all former accounts may be surcharged of items not actually disputed, allowed through error or mistake. (R. S. 22-915.) In this instance it was egregious error to allow the executor credit for worthless securities which he took under circumstances which made his conduct equivalent to bad faith.

It is not necessary to consider the subject further. The defense of estoppel is unavailing. Other contentions made in the brief of the executor have been considered and are without substantial merit.

The judgment of the district court is affirmed.