No. 33,003

THE CITIZENS BUILDING AND LOAN ASSOCIATION, *Appellee*, v. HENRY KNOX, as Administrator, etc., et al., *Appellants*.

(— P. 2d ——)

Opinion filed December 11, 1937.

*Roscoe W. Graves*, of Emporia, *Robert C. Foulston, George Siefkin* and *John F. Eberhardt*, all of Wichita, for the appellants.

*Edward H. Rees* and *Everett E. Steerman*, both of Emporia, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Plaintiff brought this action to foreclose a real-estate mortgage executed by Henry Knox, administrator with the will annexed of the estate of his father, Washington Knox, and executed also personally by Henry Knox and wife and his mother, Caroline Knox. A defendant, the Citizens National Bank, by cross petition, sought to foreclose its mortgage. A decree of foreclosure was entered; the real property was sold at sheriff's sale and purchased by the mortgagees; the sale was confirmed, and in due time sheriff's deeds were executed and recorded. The principal defendants were the heirs and devisees of Washington Knox. Some of these had been served by publication. Thereafter, and within the time and in the manner provided by G. S. 1935, 60-2530, they applied to have the foreclosure decree opened up and to be permitted to defend. This application was granted. Their defense, as disclosed by their answers, was that Henry Knox, as administrator with the will annexed, had no authority to execute the mortgages at the time and under the circumstances he did so; hence, they were not valid liens upon

the shares or interests of the answering defendants. Upon the trial of the issues raised by these answers the trial court ruled that Henry Knox, as administrator, had authority to execute the mortgages, or at least that the answering defendants were in no position to contend otherwise, and further held that the validity of the mortgages previously had been determined in a partition action between the parties. Judgment was rendered reinstating the foreclosure decree. Defendants have appealed.

A fuller statement of the facts appears necessary. Washington Knox, a farmer residing in Lyon county, died testate December 5, 1912. At the time of his death he appears to have owned 200 acres of land. He left surviving him his widow, Caroline Knox, and twelve living children; also a granddaughter, the sole child of a previously deceased son. The will provided:

"Item 1. Subject to the payment of my just and lawful debts, I give, devise and bequeath unto my beloved wife, Caroline Knox, all my property, real, personal and mixed, she to have, use and enjoy the whole thereof during her natural life. It is my desire and purpose, and I hereby direct that out of my said property my said wife shall be well maintained, and all her reasonable comforts be provided for, and my executor or other person lawfully administering my estate, is hereby authorized and directed to see that such maintenance and such comforts are provided out of my property and out of its uses, rents and profits, and if necessary therefor he may use and consume any required portion of the principal of my said property. The proper and reasonable expenses incurred in the burial of her body and mine shall be paid by my executor, out of my estate."

The will then gave to the granddaughter $50, to be paid at the death of his wife, and devised and bequeathed unto his children the "residue of all my property unconsumed at the death of my said wife" in specified shares—to Henry Knox one half, to George and Angeline each one fortieth, and to each of the other nine children, all of whom were named, one twentieth, except that one of the children, John, was to be charged in the settlement with an advancement of $130. It named the son, Henry Knox, as executor. The will was duly admitted to probate January 18, 1913. Henry Knox was appointed and qualified as executor, and filed an inventory of the estate. This listed, as the personal property of the estate, horses, cattle, hogs, farm implements, grain and hay, of the aggregate appraised value of $1,205.40; also listed and appraised the real estate as follows: Forty acres, northwest quarter of northwest quarter of section twenty-seven, at $2,400; eighty acres, east half,

northeast quarter, of section twenty-eight, $3,800; and eighty acres, east half of southwest quarter of section twenty-two (all in township nineteen, range eleven); a one-half interest to the estate, and one half to Archie and Isaac Knox, $4,800. On March 1, 1913, Henry Knox, as executor, applied and obtained permission from the probate court to pay $150 interest, due that date, on a mortgage to A. M. Sutherland, and $60 interest, due that date, on a note to the Citizens National Bank. On January 28, 1914, the executor filed his annual account. This is a detailed statement of receipts and disbursements, mostly in operating the farm. He charged himself with money received from the sale of grain, hay and livestock in the sum of $1,666.33 and asked credit for items of expense for the burial of the testator, for the payment of taxes on the land, insurance, interest on notes, groceries, and other household and farm operating expenses, aggregating substantially the amount of the receipts, all of which was reported as "expended for the use of Caroline Knox and the upkeep of the farm." On March 1, 1915, having given notice thereof, he filed his final account and asked for appropriate orders thereon. Like the previous one, the account was a detailed report of receipts from the sale of livestock and farm products aggregating $2,523.59, and disbursements for operating the farm and living expenses, the payment of interest and notes to the bank, aggregating about as much as the income. The report showed the personal property on hand. The report was approved, the personal property delivered to the widow, Caroline Knox, and she executed a receipt therefor, and the court found and determined "the heirs under the will" of Washington Knox to be Caroline Knox, his widow, George Knox, Angeline Knox, Henry Knox, Mary Casbury, Lydia Knox, John Knox, Edith Coleman, Hallie Wilson, Archie Knox, Virgie Knox, Caroline Knox and Isaac Knox, his children, and Lela (or Lena) Jonse Knox, daughter of James Knox, a deceased son. Also the court made an order discharging Henry Knox and his bondsmen from all liability on account of the administration of the estate.

On September 26, 1927, Henry Knox filed in the probate court in the matter of the estate of Washington Knox a motion to reopen. This recited the death of Washington Knox, the probate of his will, the appointment of an executor, and his administration of the estate, as shown by his reports; referred to provisions of the will for the care and maintenance of Caroline Knox; alleged the estate had been

closed improperly and without making provision for the care and maintenance of Caroline Knox; that she was without means, and there was no way to provide for her except out of the property; and alleged that it was necessary to borrow approximately $1,500 out of which to provide, care for and maintain her. The request was for an order opening the estate for further administration, and that an order be made directing the executor to raise sufficient moneys for the care, support and maintenance of Caroline Knox, as might be necessary from time to time, and that he be authorized to borrow $1,500 at that time for such purposes. This motion was heard and allowed. Henry Knox was appointed administrator with the will annexed and required to give bond in the sum of $1,000. He qualified as such administrator and gave the bond. The application for authority to borrow $1,500 for the purposes stated in the motion was set for hearing September 10, 1927, and notice required by the court was given to the heirs and devisees. At the hearing the court made an order authorizing such administrator to borrow $1,500 for the purposes mentioned and to secure the same by a mortgage on the east half of the southwest quarter of section twenty-two, township nineteen, range eleven. As a result of these proceedings the mortgage sought to be foreclosed in this action was given. It was signed by Henry Knox, as administrator with the will annexed, of the estate of Washington Knox, also by Henry Knox and his wife, and by Caroline Knox personally. An account filed by the administrator in the probate court January 10, 1929, shows that he received $1,500 on this mortgage and that he paid out the bulk of it to the bank on notes, interest, coupons and overdraft, and that the remainder of it was used to pay taxes and for household and other farm operating expenses. There was found in the files of the probate court, but not shown to have been acted upon, a petition and order of December, 1928. The petition called attention to the provisions of the will for the executor to pay the funeral expenses of the testator's widow, and alleged there was due and owing for that purpose $350, also taxes of $274.94, and interest past due on a real-estate mortgage of $106, and expenses for repairs on the premises of $100, aggregating $828.94, and asked for an order authorizing the administrator to mortgage the real property for the money to pay those items. While this petition appears not to have been acted upon by the probate court, nor the order authorizing it to have been signed by this probate judge, the administrator did make a mortgage to the

Citizens National Bank to secure his note for $828.94, dated December 6, 1928, by which he procured the money to pay those items. This mortgage covered the entire 200 acres. This mortgage is the one sought to be foreclosed by the defendant, the Citizens National Bank, in this action. On May 27, 1932, Virgie Knox Wilson filed in this case in the probate court a complaint against Henry Knox, administrator with the will annexed of the estate of Washington Knox, to the effect that he had concealed, embezzled and conveyed away money and property of the estate, which she was unable to describe, and asked that a citation be directed to him requiring him to be examined under oath touching such matters. The citation was issued and served, but the record shows no further action thereon. On September 25, 1933, Edith Knox Taylor, Lydia Knox Gardner and Virgie Knox Wilson filed in the probate court a complaint that Henry Knox, administrator of the estate of Washington Knox, had failed and refused to make reports and account for personal property which had come into his possession, and asked that a citation be issued requiring him to make such report. This appears not to have been acted upon.

On December 17, 1931, John Knox, a son, and Eva Knox Slade, the widow of Archie Knox, a deceased son of Washington Knox, brought an action in the district court to partition the 200 acres of land. The defendants were Henry Knox, as executor of the estate of Washington Knox, and Henry Knox, George Knox, Angeline Stowers, Lydia Knox Gardner, Edith Coleman Taylor, Hallie Wilson and Virgie Knox, children of the testator. At that time the widow of Washington Knox and four of his children, Mary Casbury, Caroline Knox, Isaac Knox and Archie Knox, were deceased. Julia Holt, the Citizens National Bank of Emporia, the Citizens Building and Loan Association of Emporia, and others, were made parties defendant, and as to them it was alleged that they had or claimed some interest in or some lien upon the property, the nature and extent of which plaintiffs did not know, and they were asked to set out their respective claims. It was alleged the property was subject to partition, and the shares of the respective parties in the property under the will of Washington Knox, and as modified by the death of some of the children, were stated. On February 23, 1932, the defendants, Lydia Gardner and Edith Taylor, filed their answer, each claiming a definite share of the property and alleging that it was not a proper time to partition the

property for the best interests of the parties. On February 29, 1932, the Citizens Building and Loan Association answered, alleging it had a mortgage on a certain eighty acres of the land to secure the note dated December 10, 1927, executed by Henry Knox, as executor, and also by him and his wife and Caroline Knox personally, and prayed that if the real estate be sold, the sale be subject to the mortgage. On the same date the Citizens National Bank filed its answer, setting up its mortgage of December 6, 1928, to secure the note of that date executed by Henry Knox personally and as executor of the estate of Washington Knox, and on April 16, 1932, Virgie Knox Wilson filed her separate answer denying generally the allegations of the petition and of the answer of the building and loan association and of the bank, but alleging that owing to the depressed condition of real estate it was inadvisable to partition the property. Julia Holt answered and alleged that she was the holder of a certificate of purchase in a certain action previously brought to foreclose a mortgage on eighty acres of the land—the east half of the northeast quarter of section twenty-eight, township nineteen, range eleven—and asked that that tract be not partitioned. In this action Henry Knox, as executor of the estate of Washington Knox, and Henry Knox and Lydia Knox Gardner, were served personally with summons. The other defendant heirs, George Knox, Angeline Stowers, Edith Coleman Taylor, Hallie Wilson and Virgie Knox Wilson, were served by publication. On May 2, 1932, the court rendered judgment in that action, finding and deciding, among other things, that the mortgage of the Citizens Building and Loan Association was a valid lien upon the property described therein, and that the mortgage of the Citizens National Bank was a valid lien upon the real property described therein, except the eighty acres which had been foreclosed and for which Julia Holt held the certificate of purchase, which eighty acres was held not subject to partition by reason of such foreclosure; found the interest and shares of the parties in the remaining 120 acres of land to be subject to the liens of the mortgages to the building and loan association and the bank, and entered a decree of partition of the 120 acres subject to such mortgages. Commissioners were appointed, who valued and appraised the property. An order of sale was issued and the sale advertised, but the sheriff reported that he was unable to sell the property for want of bidders. The defendant, Virgie Knox Wilson, filed a motion for a new trial, which was over-

ruled, and on October ,13, 1932, the defendants, Lydia Knox Gardner, Edith Coleman Taylor and Virgie Knox Wilson, appealed from the judgment and decree of partition to the supreme court. They filed no abstracts or briefs, and on motion of the plaintiffs the appeal was dismissed April 20, 1933.

This action was filed April 21, 1932, by the Citizens Building and Loan Association to foreclose its previously mentioned mortgage on eighty acres of the land. The defendants were Henry Knox, as administrator with the will annexed of the estate of Washington Knox, and Henry Knox, George Knox, Angeline Knox Stowers, Lydia Knox Gardner, Edith Coleman Taylor, Hallie Wilson, Virgie Knox Wilson, being all of the living children of Washington Knox, also the heirs, etc., of deceased children, and the Citizens National Bank and others, who had, or might claim, a lien on the land. There was personal service of summons on Henry Knox, as administrator and as an individual, and on Virgie Knox Wilson and Lydia Knox Gardner, and summons by publication on the other children, heirs and devisees of Washington Knox. At the argument we were told only five of the children were living. The Citizens National Bank filed an answer and cross petition to foreclose its previously mentioned mortgage on 120 acres of the land, conceding that eighty acres—the east half of the northeast quarter of section twenty-eight, township nineteen, range eleven, east—was owned by Julia Holt under a previous foreclosure decree. At the trial, June 18, 1932, all defendants, except the Citizens National Bank, were in default. The court found the amount due plaintiff and the amount due the bank; rendered a personal judgment therefor against Henry Knox, as administrator, and against him personally, found the mortgages to be valid liens upon the real property as alleged in the petition and cross petition, and made an appropriate decree foreclosing both mortgages and directing the sale of the mortgaged property. In due time an order of sale was issued and the property sold, plaintiff buying the eighty acres covered by its mortgage and the Citizens National Bank buying the other forty-acre tract, both purchases being for the full amount of the respective judgments, with interest, taxes and costs. The sales were confirmed and certificates of purchase issued, and after the period of redemption expired sheriff's deeds were executed. On May 2, 1934, Virgie Wilson, Edith Coleman Taylor, and Hallie Wilson, proceeding under G. S. 1935, 60-2530, filed their respective motions, affidavits, notices

and answers, and asked that the judgment and decree of June 18, 1932, be opened, and that they be permitted to defend. These motions were considered and allowed by the court December 20, 1935. The respective answers set up the interest each of the defendants had in the property under the will of their father and by reason of the death of their mother and some of the children, and specifically denied that on or about December 10, 1927, the estate of Washington Knox, or Caroline Knox, was indebted to the plaintiff, and denied that Henry Knox, or Caroline Knox, had any lawful right or power to execute a valid mortgage to plaintiff; denied that plaintiff had any authority to pay taxes on the property, as it had alleged it had done under its mortgage; alleged that the estate had been duly closed March 1, 1915; that plaintiff had not at any time filed a claim in the probate court; and alleged that on December 10, 1927, Caroline Knox was feeble and lacked mental capacity to comprehend business, or to execute the mortgage, and that she received no consideration therefor. There was a cross petition in which it was alleged that plaintiff and Henry Knox had operated the farm for several years, and which asked for an accounting of income from it. Separate answers, somewhat similar in their tenor, were filed to the cross petition of the Citizens National Bank. On July 15, 1935, an instrument, called an amendment to the petition to open the judgment, was filed on behalf of Virgie Wilson, Edith Taylor, Hallie Wilson, Lydia Gardner and Marcellia Knox. This specifically charged fraud and conspiracy between the plaintiff, the Citizens National Bank and Henry Knox in the execution of the notes and mortgages foreclosed, alleging that the money was in fact needed to pay previous obligations of Henry Knox. No other pleadings were filed. After a trial, at which documentary evidence and oral testimony were received, the trial court, on September 14, 1935, made findings of fact and conclusions of law, as follows:

"1. That the will of Washington Knox, deceased, devised unto his wife, Caroline Knox, all of his property, real, personal and mixed, to have, use and enjoy the whole thereof during her natural life, and that any of said property unconsumed by Caroline Knox for her maintenance, support and comfort during her lifetime, was to go to his children, as specifically provided for in said will; that under the provisions of said will, Caroline Knox received a life estate in the real estate involved in this action, with full power of disposition, and the executor or other person lawfully administering said estate, which would include the life tenant, had full power and authority to execute the mortgage foreclosed.

"2. That the finding of the probate court that the administration of the estate of Washington Knox was improperly closed on March 1, 1915, has become absolute, final and conclusive upon this court, and irrespective of whether or not said finding of the probate court became conclusive, the order of final accounting and discharge entered on said date should be construed in harmony with the provisions of the will and not antagonistic thereto, and the executor was not divested of his authority granted under the terms of the will to act in behalf of the estate in the maintenance, care, keep and comfort of Caroline Knox; that the proceedings had in the probate court of Lyon county, Kansas, on December 10, 1927, and the order entered by said court, have become final, absolute and conclusive upon each of the parties to this action, there having been no appeal taken from said order, and the attack now attempted to be made upon same is a collateral attack, and this court is without jurisdiction to set aside, vacate or modify said order made and entered in said court.

"3. That the question of the validity of the mortgages foreclosed in this action is now *res adjudicata*, by reason of the proceedings had in the case of *John Knox et al. v. Henry Knox et al.*, case No. 17,762, in this court, wherein due and legal service was had upon all of the parties defendant complaining in these proceedings in this action, and wherein this court entered judgment, from which no appeal was taken or other proceedings had, that the mortgages foreclosed upon in this case were a first and prior and subsisting lien upon the real estate involved herein; that said judgment entered in said partition action has become final, absolute and conclusive, and is of full force and effect as to said defendants and each of them in these proceedings.

"4. That the defendants, Virgie Knox Wilson and Lydia Knox Gardner, cannot be heard in these proceedings, for the further reason that each of said defendants were personally served with summons in this action; that the time of appeal has elapsed, and under the law said judgment entered herein has become final, absolute and conclusive upon each of said defendants, and they are now estopped from asserting that they did not receive legal notice herein.

"CONCLUSION OF LAW

"That the judgment and decree of foreclosure entered in the above-entitled cause on the 18th day of June, 1932, and as amended on August 1, 1932, be and the same hereby is reinstated; and that the judgment and decree entered, and all proceedings had thereunder be, and the same are hereby approved and confirmed; that the defendants pay the accrued costs of these proceedings. (Filed in the clerk's office September 14, 1935.)"

Thereupon the defendants, Edith Coleman Taylor, Virgie Knox Wilson, Hallie Wilson, Lydia Knox Gardner, Marcellia Knox and Angeline Stowers, filed a motion for a new trial, also a motion to modify the findings and conclusions, and for judgment that the mortgages were wholly void, and that the mortgagors lacked authority to execute them. All these motions were overruled. On March 7, 1936, defendants filed their notice of appeal.

We turn now to the appeal and the questions raised therein. On the face of the record it appears that Edith Coleman Taylor and Hallie Wilson are the only persons entitled to be heard on this appeal. Virgie Knox Wilson and Lydia Knox Gardner were personally served with summons in the foreclosure action, and any defense they had should have been made before the judgment and decree of foreclosure rendered June 18, 1932. Angeline Stowers was served by publication, but she made no application to open the judgment. The statutory time allowed for her to do so has expired, and she is bound by that decree. Marcellia Knox, who first appeared in this case under that name on July 15, 1935, is either a stranger to the suit, or claims under one of the deceased children of Washington Knox, and as such was made a party to the action and served by publication. She filed no motion to open the judgment and her time for doing so has expired. With respect to this, however, appellants say that they concede the mortgages are valid as to the separate interest of Henry Knox in the property, for the reason that he signed the notes and mortgages in his individual capacity. Their contention is that the mortgages are void as to the interest of other children of Washington Knox in the property, or the heirs of such of those as are deceased; and it is further contended that if the mortgages should be held void as to Hallie Wilson and Edith Coleman Taylor they are of necessity void as to Virgie Knox Wilson and Lydia Knox Gardner notwithstanding the fact that they were personally served with summons and made no defense in the case, and void as to Angeline Stowers and Marcellia Knox, who made no application to open the judgment and who otherwise would be bound by the decree. Because of the separate nature of the interests of these parties in the property, and their separate relations to the litigation as shown by the record, it is obvious there would be some difficulty in sustaining that contention. But in the view we take of other questions in the case it will not be necessary to decide this one.

Appellants argue that the probate court had no power or authority to reopen the case of Washington Knox in September, 1927, and to appoint Henry Knox administrator with the will annexed, for the reasons that as executor he had administered upon the estate, and the administration had been closed in March, 1915; that the will created a trust for the benefit of the widow, Caroline Knox (69 C. J. 735) ; that if anything was needed in 1927 it was a trustee,

and that the probate court had no power, authority or jurisdiction to appoint a trustee or to administer a trust estate. It is argued that the appointment of a trustee, the supervision and final disposition of a trust estate are governed by equitable principles cognizable only in a court of equity such as our district court, which is a court of general jurisdiction. (G. S. 1935, 20-301.) Appellants point out that the authority granted by the will for someone to see that his wife should be well maintained and all her reasonable comforts provided for out of the testator's property is not given to Henry Knox individually, nor necessarily to an executor, but to "my executor or other person lawfully administering my estate." (3 Bogert, Trusts and Trustees [1935] § 553, p. 1743.) Hence, it is argued that Henry Knox, having been discharged as executor in 1915, after fully administering the estate as executor, and his appointment in 1927 having been made by a court having no jurisdiction to appoint him as trustee, he was not a "person lawfully administering" the estate of the testator, and that his execution as such administrator of the mortgages sought to be foreclosed in this action was of no legal effect, and that the mortgages never were valid liens upon the shares of appellants in the property. Appellants concede the mortgages were valid liens upon the shares of Henry Knox in the property, for he signed them individually as well as in his purported capacity as administrator with the will annexed of the estate of Washington Knox. It is further argued that the signature of Caroline Knox on plaintiff's mortgage made it a lien only upon her interest for life in the property, which ceased with her death, and possibly upon the shares of children previously deceased which she had inherited at the time the mortgage was executed; but just what these shares were was not attempted to be shown clearly, for in any event, under this view, the mortgage would not be a lien upon the shares of appellants unless Henry Knox was a "person lawfully administering" the testator's estate. It is further conceded by appellants that the mortgages are valid liens upon their shares of the property, if Henry Knox at the time he executed them was the "executor or other person lawfully administering" the estate of the testator and if the money represented by them was borrowed for a purpose contemplated by the will, and that this would be true without regard to whether the probate court made an order specifically approving the execution of the mortgages (it did approve one of them, but not the other), for if Henry Knox was lawfully administering the estate he was

authorized by the will to well maintain Caroline Knox and provide for all her reasonable comforts.

Therefore, the first important question for our determination is whether the probate court in 1927, nearly twelve years after the executor had been discharged, had power, authority or jurisdiction, upon the application made, or upon any application, to appoint Henry Knox as administrator with the will annexed of the estate of Washington Knox. In determining this question—without analysis as to its soundness and since it is more favorable to them—we shall take the position contended for by appellants, namely, that by his will the testator created a trust of all of his property for the comfortable maintenance, and ultimately for the burial, of his wife, Caroline Knox. The question is not free from doubt. Our attorneys and jurists frequently have difficulty in fixing the exact boundaries of jurisdiction of probate courts of our state respecting trusts and trustees; and we cannot hope, nor shall we attempt, to make such boundaries clear in all respects in this opinion.

Our district courts, being courts of general jurisdiction, have jurisdiction over trust estates and trustees. (*Knox v. Knox*, 87 Kan. 381, 124 Pac. 409; 26 R. C. L., § 123, p. 1273.) Unquestionably the district court had jurisdiction to appoint a trustee, if one were needed, to carry out the trust provisions of the will in question. Naturally, had the appointment been made by the district court, the question now presented for our determination would not have arisen; but we must pass upon the question presented, not some other.

The general rule, stated by many authorities, is that the ordinary powers conferred upon probate courts as such do not include the appointment of trustees, or the administration or accounting of trust estates, but that such jurisdiction may be given to courts of that name by the constitution and statutes of a state. (65 C. J. 1017.) The result is that such jurisdiction has been given in whole or in part to courts designated probate courts by the constitution and statutes in many of our states, while in others such jurisdiction has not been given. (See cases collected, 21 Ann. Cas. 255; also, *De Ladson v. Crawford*, 93 Conn. 402, 106 Atl. 326.)

There is a well-recognized distinction between the administration upon an estate, either under the law or a will, and the supervision of a trust whether created by will or not. In the administration upon an estate the executor of the will, or the administrator under

the law, has the general duty of collecting the assets of the estate, paying the debts of the decedent, and making distribution of the remainder of the estate to the beneficiaries named in the will, or to those entitled to it under the law, and when he completes those duties he has performed the functions of an executor of the estate. If the will in fact creates a trust with respect to all, or certain of the property, the distribution of that part of the property should be made to the trustee whose duty it becomes to carry out the provisions of the trust.

Since the jurisdiction of the probate courts of a state depends upon the constitutional and statutory provisions of the state, we must look to our constitution and statutes to see what jurisdiction our probate courts have respecting the question before us, namely, trusts created by wills. The pertinent portion of our constitution reads:

"There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, . . . as may be prescribed by law. . . ." (Art. 3, § 8.)

The term "probate jurisdiction," as used, perhaps applies to admitting or refusing to admit wills to probate, for such is its primary meaning. The phrase, "care of estates of deceased persons," is a broad one. It does not depend upon whether the deceased person left a will, or if he did, whether it created a trust. The words, "care of estates," cannot be construed narrowly as simply looking after property, but should be construed broadly so as to include all necessary care of estates, which includes getting the property of the estate together, giving it such attention as its nature requires, for such time as the law, or a will, may provide, and eventually distributing it to creditors, to heirs at law, or to beneficiaries under a will, as their rights thereto are determined. So far as our constitution controls the situation no distinction is made between estates of those who died without a will, or with a will, or where the will, if there was one, created a trust. With respect to any estate of a deceased person, the probate court has such jurisdiction "as may be prescribed by law." In this way our constitution authorizes our legislature to fix the jurisdiction of probate courts with respect to estates of deceased persons.

We next look at our statutes. G. S. 1935, 20-1101, being the general section respecting jurisdiction of probate courts, does not mention trusts or trustees, but contains no provision prohibiting

the granting of such jurisdiction under other statutes. G. S. 1935, 20-1107, gives the probate court jurisdiction over trusts created by deeds of trust, declarations of trust, wills, or otherwise, in favor of minors; not, however, to the exclusion of district courts. G. S. 1935, 62-2002, authorizes the probate court to appoint a trustee to take charge of and manage the estates of persons convicted of a felony, and the subsequent sections in that article provide for the handling of the trust estate and its final disbursement under the supervision of the probate court. Under G. S. 1935, 67-410 to 67-412, when the surviving trustee of any express trust dies, resigns, or is removed, "the court having jurisdiction" may appoint a new trustee, "and all vacancies in express trusteeships may be filled by such court." Under G. S. 1935, 22-269 to 22-272, a trust created by a foreign will, relating to land in this state, after the will is admitted to record in this state, may be executed by the trustee named in the will upon giving such bond with sureties as shall be approved by the probate court; or when necessary the probate court may appoint a trustee to carry into effect a trust created by a foreign will. (See *Noecker v. Noecker,* 66 Kan. 347, 71 Pac. 815.) Referring to testamentary trusts generally, two sections of our statute read:

"Where two or more trustees are appointed by will to execute a trust, and one or more of them die, the survivor may execute the trust, unless the term of the will expresses a contrary intention." (G. S. 1935, 22-267.)

"If such will has not provided for the contingency of the death, incapacity or refusal of such trustee or trustees to accept or execute the trust, the probate court, having admitted said will to probate, may appoint some suitable person or persons to execute the trust according to the will, who shall give bond, with security, as provided in section sixty-six (22-270) of this act." (G. S. 1935, 22-268.)

These sections, as well as those above cited pertaining to trusts created by foreign wills with respect to land in this state, are a part of chapter 86, Laws of 1865. This chapter was adopted from Ohio. Except as to a few verbal changes, not here important, it is a verbatim copy of the Ohio act of May 3, 1852. (Ohio Laws 1852, pp. 297 to 311.) This Ohio statute, and the sections here important, have been construed many times by the courts of Ohio.

In *Clark v. Neil, Trustee,* 24 Ohio N. P., n. s., 589 (1924), the specific question was whether the trustee under the will before the court had authority to sell real property and execute valid deeds therefor without an order of the court. It was held he did have such authority. As an incident to the main question there was also

the question of the authority of the probate court to appoint a trustee and the powers of such appointee. With respect to that it was said (p. 601):

"But the statute in Ohio covers the ground. Sec. 5986 (now sec. 10596), which authorizes the appointment of a trustee to execute a trust, was passed May 3, 1852. Judge Swan in his early annotations of the statutes stated that this statute was passed to clear up the doubt that previously existed as to whether or not a court of chancery could execute a trust where a will conferred a mere power of selling, or otherwise disposing of property, and the power had not been executed. The statute read as follows:

" 'If any testamentary trustee shall die, decline to accept, resign, become incapacitated, or be removed, and such will has not provided for the contingency of the death, incapacity or refusal of such trustee or trustees to accept or execute the trust, or such will names no trustee, the probate court, having probate of said will, may appoint some suitable person or persons to execute *the trust according to the will,* who shall give bond with security as provided herein.' (Sec. 3986 R. S.)

"A court of equity would have the power to appoint a trustee in succession upon the death of the trustee named in the will, without the aid of this statute, but the probate court not being a court of original equity jurisdiction, this statute would be necessary to enable it to appoint a trustee, though it was passed before the probate court was established.

"The statute, however, goes beyond the mere power of appointment and confers power on the *'person or persons to execute the trust according to the will.'* "

See, also, *Boals v. Clingan, Trustee,* 6 Ohio N. P., n. s., 609 (1908), where the authority of the probate court to appoint a trustee was sustained, although no testamentary trustee was named in the will; and in *Stasel, Trustee, v. Rider et al.,* 12 Ohio N. P., n. s., 141 (1910), it was held:

"Where a will vests in a testamentary trustee discretion in the employment of a portion of the principal in maintaining the cestui que trust, the trustee is an officer of the probate court in the administration of the trust, and the common pleas court is without jurisdiction in an original action to determine whether or not the welfare of the ward requires a sale of some portion of the property and the use of the proceeds, or whether the price offered for the property which it is proposed to sell is reasonable and proper."

And in *Sowers v. Cyrenius,* 39 Ohio St. 29 (1883), it was held:

"When one of the trustees named in the will died, and another removed to a place unknown, the probate court had power to fill such vacancies, although there was a surviving trustee capable of executing the trust."

In Rockel's Complete Ohio Probate Practice, 4th ed. (1924), sections 1250 to 1272, is set forth the state of the Ohio statutes and decisions. This discloses that while the chancery courts, generally speaking, have jurisdiction of trusts and trustees, with respect to

testamentary trusts, probate courts also have such jurisdiction. The distinction between the duties of an executor as such and a testamentary trustee is pointed out, and it is noted that under some wills there is difficulty in determining where the duties of one end and the other begin. The proper practice suggested is to close the estate as executor and for the court to make the appointment of the trustee, or an appropriate order recognizing his appointment by the will, if that was done, and forms for the application and for the order for the appointment of such trustee are set out.

In our own state our decisions disclose the practice in our probate courts respecting testamentary trustees has not been uniform. In *Diller v. Kilgore,* 135 Kan. 200, 9 P. 2d 643, the will made provision for the widow somewhat similar to that made in this case. The executor closed the estate as such. At that time the widow and the ultimate beneficiaries under the will, all of whom were adults, orally agreed among themselves that the person who had been executor should continue to act in the capacity of trustee for the investment and management of the estate and the distribution of income as provided by the will. This continued for a few years. The widow then brought an action in district court asking to have the property turned over to her. The court found the will created a trust for the benefit of the widow, with the remainder to the children; that it was a proper case for the court to exercise its jurisdiction in trust estates, and appointed a trustee.

In *Cooper v. Cooper,* 142 Kan. 234, 46 P. 2d 855, the will named executors, and also named the same persons as trustees of a trust specifically set up in the will. They closed the estate as executors in due time and receipted to themselves as executors for the property as trustees and continued to handle the trust estate to the end of the trust period—ten years—without the supervision of any court.

In *Shintaffer v. Bell,* 134 Kan. 101, 4 P. 2d 764, an executor was named and the will contained provisions which created a trust, as is claimed in this case. The executor was never discharged as such and continued to handle the estate under his appointment as executor for a number of years. Our reports show a number of cases handled in a similar way.

*In re Hyde, Petitioner,* 47 Kan. 277, 27 Pac. 1001, discloses a will in which a trust fund was created and trustees named to operate a bank, which they did for several years, making their reports to the probate court.

·We think it is a matter of such common knowledge that the court may take judicial notice of it, that probate courts in this state have permitted executors to continue to act under the trust provisions of a will and have removed them and appointed others as such action became necessary even after the normal time for closing the estate as executor had expired. Perhaps frequently that was done with a serious doubt as to whether it was the proper procedure, but so far as our own investigation discloses, no act of such a trustee has been held void because of the lack of jurisdiction of the probate court to administer testamentary trusts, or to appoint a trustee under the title of administrator with the will annexed, to complete the administration of the testamentary trust when such action was necessary or proper. Naturally, we would not hold all such orders and acts of all such trustees to be void because of the lack of jurisdiction of probate courts, unless the law governing the matter was so clear as to compel us to do so. We think the law compels no such holding, but, on the other hand, requires a holding that such acts are within the jurisdiction of the probate court.

Appellants stress the finality of the order closing the estate and discharging the executor in 1915, citing *Harvester Co. v. Algie,* 101 Kan. 654, 657, 168 Pac. 876. However final that may be as to the normal duties of the executor—and here it may be conceded to be final as to those things—it could not, from the very nature of things, be final as to the care, maintenance, and finally the burial, of Caroline Knox, enjoined by the will upon the executor or person lawfully administering the estate.

The trial court held appellants were estopped and barred by the judgment in the action in partition, which became final. We concur in that holding. That action was brought by some of the ultimate beneficiaries under the will of Washington Knox against the other beneficiaries under the will, the Citizens Building and Loan Association, the Citizens National Bank, and others. The beneficiaries under the will, either in their petition or in answers, set up the interest or shares which they claimed in the property. The building and loan association and the bank set up their respective mortgages, alleged they were liens upon the property, and upon the respective shares of the beneficiaries under the will. Appellants contend this did not create an issue as between the building and loan association and the bank on the one hand and appellants claiming as beneficiaries under the will on the other, and seek to have applied the rule that unless issues are joined between codefendants by

the pleadings the judgment rendered is not an adjudication of rights between them, citing 34 C. J. 1040. We think the rule is not applicable here. The claim of shares in the property made by the respective defendants on the one hand, and the claim of the holders of the mortgages of valid substantial liens upon the other, of necessity presented an issue. The court held the mortgages were valid liens. We think that judgment, if permitted to become final, is binding upon all the beneficiaries under the will of Washington Knox, who claimed shares of the property free from such liens.

Appellants argue the mortgage to the Citizens Building and Loan Association, under the evidence presented at the trial, was not given for the purpose contemplated by the will of Washington Knox, and they complain that the court did not so find. It is true at this last hearing Henry Knox testified that the notes paid by the proceeds of this mortgage were his individual debts and were not for the maintenance and care of Caroline Knox. It will be observed that this testimony was in direct conflict with record evidence. In his written application to be appointed as administrator with the will annexed, and also in his application to make this mortgage, he had represented to the probate court that the money was necessary for the maintenance and care of Caroline Knox, and his report to the court showed it was so used; so, at the best to be said for appellants, the court had before it conflicting evidence on this question. The court was not compelled to give full credence to the parol testimony of Henry Knox, belatedly made in conflict with his written representation at the time the mortgage was authorized and executed.

Appellants further suggest that the power or authority to sell property is not tantamount to mortgaging it; but that principle has no application here. The will did not direct the sale of property, if necessary to care for and maintain Caroline Knox, but, on the other hand, provided that she should be cared for and maintained out of the property. Whether under the circumstances that could best be done by a mortgage or by a sale of part of the property was a matter which the testator left to the discretion of his executor, or other persons lawfully administering his estate. So far as the will is concerned, it gave as much authority to execute mortgages as to execute deeds.

Some other points are argued, but we think it is not necessary to deal with them separately. We see no error in the record of which appellants can complain.

The judgment of the court below is affirmed.