No. 30,416.

FANNIE DILLER, *Appellant,* v. R. H. KILGORE, CLARENCE O. DILLER, MRS. FLORA NETTIE KING and EVERETT FLOYD DILLER, *Appellees.*

(9 P. 2d 643.)

Opinion filed April 9, 1932.

*John Madden* and *John Madden, Jr.,* both of Wichita, for the appellant.

*A. L. L. Hamilton, R. C. Woodward* and *J. B. McKay,* all of El Dorado, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to determine the rights of parties

under a will and for an accounting. Judgment was for defendants. Plaintiff appeals.

This action was begun by Fannie Diller, the life tenant of the property in question, under the will of her deceased husband. The will was as follows:

"I hereby give, bequeath and devise unto my beloved wife, Fannie Diller, for and during the term of her natural life, all property of which I may die seized, both real, personal and mixed.

"I further give to my beloved wife, Fannie Diller, the right, power and authority to execute oil and gas leases on any real estate of which I may die seized and same as if she owned the same in fee simple, she to collect the bonus and rental.

"Upon the death of my beloved wife, Fannie Diller, I give, bequeath and devise all the rest, residue and remainder of my property, both real, personal and mixed, unto my children, Clarence O. Diller, Everett Floyd Diller and Flora Nettie King, share and share alike."

In the action she asked personal judgment against the administrator of her husband's estate. This administrator answered that he held certain property as trustee and that he did not claim any right, title or interest in the property other than as trustee, and that he did not care to act as trustee any longer. He tendered his resignation to the court and asked it to accept this resignation, assume jurisdiction of the trust and appoint a successor as trustee. He also asked that all the remaindermen be made parties defendant. This was done. Trial was by the court. The rest of the story can best be told in the findings of fact and conclusions of law of the trial court. They are as follows:

### "FINDINGS OF FACT.

"1. Henry Diller, husband of the plaintiff, Fannie Diller, and father of the defendants, Clarence O. Diller, Flora Nettie King and Everett Floyd Diller, died testate September 8, 1927. On September 19, 1927, the widow, plaintiff, filed in the probate court of Butler county, Kansas, a petition to admit the last will and testament of the deceased to probate. In such she was appointed executrix to serve without bond, and in her petition for its probate she stated that on account of her age and infirmities she declined to act as such, and asked that the defendant, R. H. Kilgore, be appointed administrator with the will annexed of said estate. Pursuant to said petition the will was admitted to probate, plaintiff elected to take thereunder, defendant Kilgore was appointed administrator, duly qualified as such, the estate duly administered upon by him, and final settlement thereof was made on February 15, 1929.

"2. By his will the said Henry Diller devised and bequeathed all his property, real and personal, to the plaintiff herein for and during the term of her

natural life, with the remainder of the personal property over to the defendants Clarence O. Diller, Flora Nettie King and Everett Floyd Diller, share and share alike. Real estate, about eight hundred (800) acres of land, also given to plaintiff for life, with the remainder to defendants, named, each a specific tract, but such is not involved in this action.

"3. At various dates while the estate was in process of administration the plaintiff and the defendants, Diller, Diller and King, discussed with each other and with defendant, R. H. Kilgore, the advisability of devising some plan whereby Kilgore should continue to handle the personal property belonging to said estate for the benefit of the life tenant and said remaindermen, after he should be discharged as administrator with the will annexed, and in and by such conversations, and prior to the date of final settlement, it had been orally agreed by said parties that such a plan would be adopted. At time of the final settlement and in pursuance of the former understanding to that effect, it was orally agreed between the plaintiff and said remaindermen and Kilgore that upon his discharge as administrator he should retain and handle said property himself as trustee for the plaintiff and the remaindermen, and that he should, during the lifetime of the life tenant, plaintiff herein, keep each property invested in bonds and like securities and pay the income accruing therefrom to plaintiff during her lifetime, and at her death divide the corpus or principal thereof equally among said remaindermen.

"4. Upon final settlement and after the payment of all debts and expenses of administration there remained in the hands of said administrator $29,012.83 in bonds, $4,315.33 in time certificates of deposit, $116.12 in notes receivable and $32,384.88 in cash, and in carrying into effect the agreement above referred to, whereby Kilgore was to retain and handle said property, the plaintiff receipted said Kilgore as administrator, for the sum of $65,829.16, the aggregate of the foregoing amounts. Administration was closed and administrator discharged on February 15, 1929. Thereafter the defendant Kilgore retained such property as such trustee and furnished to the plaintiff a bond for the performance of his duties as trustee in the sum of $131,700 with good and sufficient sureties thereon.

"5. Defendant Kilgore, while acting as such trustee, and in pursuance of said agreement, has invested and reinvested the personal property which so came into his hands as such trustee in municipal bonds and like securities. Each and every such investment made by him was first submitted to and approved by the life tenant and remaindermen. From time to time down to July 1, 1930, he paid to the plaintiff as it accrued all income or interest from such fund, which was accepted and retained by the plaintiff. Also, down to about the time this action was commenced, he rendered frequent written and oral reports to the life tenant and remaindermen concerning his administration of the trust estate. A full and complete account of his administration of said estate, showing all property which came into his hands, all investments and reinvestments made by him, all expenditures and distributions made by him, and the amount and character of the property now in his hands as such trustee, is attached to the answer of said Kilgore, and is in all respects true and correct, and the same

should be and is approved. As appears therefrom he now has in his hands as the corpus or principal of said estate, time certificates of deposit aggregating $4,100, notes receivable aggregating $116.12, municipal bonds (including the premium paid therefor) aggregating the sum of $60,558.54, and cash in the sum of $1,283.03. He also has in his hands the sum of $1,131.50, which has accrued as income subsequent to July 1, 1930, which is the property of and should be paid to the plaintiff herein as life tenant.

"6. The defendant Kilgore has never at any time claimed or asserted any right, title or interest in or to said property or any part thereof, or any right to the .possession thereof except as such trustee, and in and by his answer filed in the case and at the trial in open court he tendered his resignation as such trustee, and offered and agreed to turn over and deliver such personal property to such person or persons as the court might direct.

"7. The plaintiff herein is old and very feeble and not competent to handle and invest said personal property, and in order to protect and conserve the rights of the remaindermen in and to the same and for the protection of the plaintiff herself, the court should assume jurisdiction of the trust and appoint a successor to said Kilgore as trustee.

"8. Defendant Kilgore has never received any compensation for his services as such trustee, and the sum of $400 is a reasonable allowance therefor. The sum of $150 is a reasonable allowance for the services of his attorneys in representing him in this action.

### "CONCLUSIONS OF LAW.

"1. The oral agreement entered into between the life tenant and remaindermen as to said personal property was and is a valid and enforceable agreement and cannot be revoked by the plaintiff in this action.

"2. Said agreement legally made defendant Kilgore trustee of an express trust with respect to said personal property.

"3. The court should assume jurisdiction of said trust, accept the resignation of defendant Kilgore as trustee and appoint a successor.

"4. The account of said Kilgore as such trustee attached to his answer should be approved and confirmed.

"5. The defendant Kilgore should be allowed $400 as compensation in full for his services as trustee, and his attorneys $150 for their services in this case, which should be paid out of the corpus or principal of said estate.

"6. Upon delivering to his successor all of said trust property, including the undistributed income which has accrued thereto, less such fees as above suggested, he and his sureties on his bond should be released and discharged from any and all further liability in this action.

"7. The costs of this action should be paid by the trustee out of the corpus of the trust estate, and the court should retain jurisdiction of said estate to the end that it may be administered under its supervision and direction."

Upon these findings and conclusions judgment was rendered for the defendants. From that judgment this appeal is taken.

Appellant argues that she was entitled to the corpus of the estate

as well as the income, and that all she was obliged to turn over to the remaindermen was what remained of the fund at her death. We have concluded that this contention is not good. Appellant took only a life estate in the personal property under the will. As a life tenant she was entitled to use only the income from the property that came to her as such life tenant. As far as this case is concerned, that includes the interest on the bonds and notes and other securities. This was held by this court in *Chase v. Howie,* 64 Kan. 320, 67 Pac. 822. See, also, *Galloway v. Freeburg,* 97 Kan. 765, 156 Pac. 756; also, *Shintaffer v. Bell,* 134 Kan. 101, 4 P. 2d 764. In the case of *Blakely v. Blakely,* 115 Kan. 644, 224 Pac. 65, this court held that a similar provision in a will created only a life estate and that it was proper for the district court to compel the life tenant to give security to account for a fund to the remaindermen.

In the case at bar, no doubt, had the attention of the probate court been called to the matter, it would have compelled Mrs. Diller to give security to account to the remaindermen for the corpus of the fund. This was not done because, as we see from the court's findings, the very sensible arrangement was entered into by the life tenant and all the remaindermen, whereby an express trust was created for the benefit of the life tenant as well as the remaindermen. This trust was created by parol, it is true, but it has been held many times that "express trust in personal property may be created by parol." (39 Cyc. 51.) As was said in *Peck v. Schofield,* 186 Mass. 108:

"A trust in personal property does not require a written declaration to support it, though when put in this form its terms are more readily and satisfactorily determined, but it may be supported by oral evidence; and when it appears that a trust of this nature has been created it becomes effectual to transfer the title and operates as a gift perfected by delivery of the property, which constitutes the body of the trust. But there must be always some qualifying act by which the donor's ownership of the fund is divested, followed by an acceptance by the person selected to act as trustee of the duties raised by the fiduciary relation." (p. 111.)

Here we have the qualifying act of the donor spoken of above, that is, the act of Mrs. Diller in signing the receipt for the corpus of the fund even though she knew that Mr. Kilgore still kept it in his possession. It had the same effect as though she had handed the bonds, notes and other securities to him. This act on her part, no doubt, was highly persuasive on the trial court that her intention

was to create a trust in favor of herself and the remaindermen to whom she was obligated to deliver the corpus of the funds.

Once a valid and effective trust has been created it cannot be revoked by the creator without the consent of the beneficiaries. (*Reddy v. Graham,* 110 Kan. 753, 205 Pac. 362.) See, also, Note 38 A. L. R. 941; 2 Perry on Trusts, 7th ed., 920b. We have seen that a valid and effective trust had been created, no fraud is shown or even claimed, the trustee is carrying out the terms of the trust, and not all the beneficiaries are willing that the trust should be terminated. In fact, one of them is in court asking that the trust be continued in force. In view of these facts, the court could do nothing else in view of its findings than to refuse to terminate the trust.

There remains, then, only the question of whether there was sufficient evidence to warrant the court in making its finding as to the creation of an express trust. The court heard the witnesses and saw them testify. Mrs. Diller and her son testified that they did not understand that the conversations which are relied upon to create an express trust did so. They did, however, testify to conversations from which the inference could be drawn that the minds of all parties met on the question of the creation of an express trust. The daughter and Mr. Kilgore, the attorneys and the probate judge, testified to conversations from which the court, if it believed them to be true, was compelled to find that an express trust was created. Evidently Mr. Kilgore believed that he was trustee because he gave a trustee's bond to account to appellant for the property which he held as trustee. We have concluded that the trial court had ample evidence upon which to base its findings.

The judgment of the trial court is affirmed.