Angelia Maria GROSS, a Minor, by her mother and next friend, Marion E. Gross, Plaintiff,

v.

DOUGLASS STATE BANK, Defendant-Third-Party Plaintiff,

v.

Isadore GROSS, Jr., Third-Party Defendant.

No. KC–2169.

United States District Court
D. Kansas.

Dec. 20, 1965.

James D. Howell (Howell & Howell), Kansas City, Kan., for plaintiff.

Myles C. Stevens and James P. Davis (Stevens & Jackson), Kansas City, Kan., for defendant-third party plaintiff.

James Yates, Kansas City, Kan., for third party defendant.

### MEMORANDUM OF DECISION

ARTHUR J. STANLEY, Jr., Chief Judge.

This action was tried to the court on the 12th and 13th of August, 1965.

The plaintiff, Angelia Maria Gross, a minor, is suing by her mother and next friend, Marion R. Gross. See seeks recovery from the bank of funds allegedly in trust for the plaintiff, and allegedly converted by the bank. The bank denies liability and asks for judgment over against Isadore Gross, the plaintiff's father.

In September, 1962, Isadore Gross and his wife, Marion Gross, had savings ac-

counts in seven building and loan associations in Kansas City, Missouri, as joint tenants with the right of survivorship. At that time the accounts totaled approximately ninety-six hundred dollars. Mr. and Mrs. Gross then decided to set up the accounts as trust accounts for their daughter Angelia, in order to provide for her education. At that time, provisions in comparable amounts had been made for each of the other three children of Mr. and Mrs. Gross. To carry out their decisions, the accounts in the various savings and loan associations were changed from joint accounts to accounts for Angelia, with Mr. and Mrs. Gross as joint trustees. These accounts were carried in various ways, including: Isadore H. Gross, Jr., and Marion E. Gross as trustees for Angelia Maria Gross (minor); Isadore H. Gross, Jr. or Marion E. Gross, trustees for Angelia Maria Gross; [Mrs.] and [Mr.] or either or survivor, trustee for [Angelia]; [Mrs.] and [Mr.] joint trustees for [Angelia]; [Mr.]—[Mrs.] co-trustees for [Angelia]. At that time the intention of Mrs. Gross was that the money should not be touched, and that the accounts be allowed to grow and be used exclusively for the education of her daughter. Mr. Gross' intention was somewhat the same; however, as shown by the evidence, he later used one of the passbooks on four occasions as security for loans for his personal benefit. These loans, however, were paid off in full without affecting the accounts. One of the loans was made by the defendant. Mrs. Gross did not know of these uses of the accounts.

At all times concerned, Mr. Gross was maintaining checking accounts with the defendant bank in connection with various business enterprises. These were allowed to become overdrawn to the extent that by January, 1964, the overdrawn amount, combined with the amount Mr. Gross owed the bank on debts, was in excess of $10,000.00.

In the fall of 1963, the interest rate at the defendant bank was increased so that it equaled the rate currently being paid by the savings and loan associations in Missouri. On the urging of the bank, the Grosses decided to transfer the trust accounts to the defendant bank. The bank advised waiting until the first of the year in order to take advantage of the interest payments which would then be made. After the first of the year, the transfer was made, with the defendant handling the mechanics of the transfer, after securing Mr. Gross' signature on the withdrawal authorization in the various passbooks. It was the express intention of the Grosses that the accounts be transferred and set up in the same manner in which they were being carried in Missouri—i. e., with the Grosses as trustees for Angelia Maria, and that the accounts would remain trust accounts for her. Because of their long association with the bank, the Grosses relied on the bank to so set up the account when the funds were received.

The funds were all received at the bank by January 22, 1964. The total amount was $9,691.11. The bank did not set up the trust account, but instead, placed the money into an "accounts receivable" account. On that same day, $329.29 was applied against Mr. Gross' overdrafts. Then on March 4, 1964, the rest of the money was applied to the debts owed by Mr. Gross to the bank. This was done without the knowledge or consent of Mr. or Mrs. Gross. The bank, in so doing, was not willfully acting to the detriment of the plaintiff's interests. While it acted without authority, its acts were not fraudulent or in wanton disregard of the rights of the plaintiff.

On March 5, 1962, Mr. Gross was notified of the bank's action. He objected at that time that the money was not his, but the bank refused to reconsider its action.

■ I find that when the bank took its action, it had actual knowledge of the trust nature of the funds involved. The bank was led by the prior actions of Mr. Gross to believe that he would revoke the trust, if he had that power. However, at the time the action was taken, Mr. Gross had as yet done nothing to indicate that the trust was presently revoked.

The law applicable to this case is not clearly defined. The first issue is, which state's law applies. The facts giving rise to this cause of action stem from the attempt to establish a trust on the transfer of the funds to the defendant bank in Kansas. Thus, Kansas law will be applied to determine the effect and validity of any such trust. However, it is necessary to look at Missouri law, because if, under that law these funds were in an irrevocable trust, their nature could not be changed merely because of the transfer to Kansas.

The nature of the trust, as it was set up in Missouri, would appear to be closely similar to a tentative or "Totten" trust. See In re Totten, 179 N.Y. 112, 71 N.E. 748, 70 L.R.A. 711 (1904). I have found no Missouri cases which have passed upon the validity or effect of these trusts in Missouri. There is a Missouri statute which recognizes the situation and seems to validate a savings deposit trust; however, the statute only makes the trust valid at the time of death of the settlor and is for the protection of the holder of the funds, to allow him to distribute the money to the beneficiary, without fear of liability. See V.A.M.S. § 364.240. In view of my disposition of this case—that plaintiff is entitled to the funds under Kansas law—I will pass this point without deciding what the Missouri courts would hold. As stated above, Missouri law would affect this case only in the event of a finding of irrevocability of the trusts, and then the effect could only be in the plaintiff's favor. Since the plaintiff is to recover anyway, the decision of this close, undecided question of Missouri law is unnecessary to the case at bar.

Coming, then, to Kansas law, the first question presented is whether there was a valid trust. Kansas, like Missouri, has not passed upon the specific question of Totten trusts. See Comment, 9 Kan.L. Rev. 46 (1960). The Kansas Supreme Court has stated the elements of proving the execution of a valid trust to be: 1) a declaration and intention to establish a trust; 2) a transfer of property; 3) a definite corpus; 4) a requirement to hold the money as trustee. See Shumway v. Shumway, 141 Kan. 835, 44 P.2d 247 (1935). In the case at bar, each of these elements was established. There was a definite corpus, which was transferred to be held in a trust account, and the requisite intention to establish a trust was present. The *Shumway* case also stands for the proposition that the settlor can make himself the trustee, as was done in the instant case.

Kansas has recognized that a trust may be valid, even though it is revocable. In re Estate of Morrison, 189 Kan. 704, 371 P.2d 171 (1962); see Comment, 11 Kan.L.Rev. 375 (1963). Thus, even though the Kansas Supreme Court has not been called upon to consider a trust in a savings account, as in the present case, it appears that under Kansas law, there is here a valid trust.

The second issue is whether the trust in this case was revocable or irrevocable. The trust, as stated above, is in the nature of what has been recognized in other states to be a revocable trust. This is true, particularly because of the difficulty of enforcing a holding to the contrary. However, those cases typically arise after the death of the settlor, and the finding of revocability is a presumption in absence of any other evidence of the settlor's intention. The governing factor, as in the case of all trusts, is the intention of the settlor. Thus, the settlor's intention may be established by the evidence. The evidence in the case at bar establishes that there were joint settlors. Mrs. Gross' intention was that the trust was to be irrevocable. From the conduct of Mr. Gross, it appears that his intention was that the trust was to be revocable. (Even though he states that he considered it irrevocable, he did use it as a security on a loan, impliedly admitting that he felt he had the power to revoke.) I have found no cases which consider the effect of a differing intention on the part of joint settlors. Kansas law offers little help.

There is a rule of law in Kansas that where there is a voluntary trust of

personal property, if there is no power to revoke reserved in the trust agreement, it cannot be revoked without the consent of the beneficiary. Diller v. Kilgore, 135 Kan. 200, 9 P.2d 643 (1932). However, if Kansas does recognize the Totten trust, it seems likely that it will accept the doctrine in its entirety, including the revocability feature. Thus, the rule of the *Kilgore* case would not be applicable.

Assuming that Kansas would follow the rule of the *Kilgore* case, the trust in question here would be irrevocable and the plaintiff would be entitled to recover. However, if Kansas adopts the Totten trust doctrine *in toto*, the trust would be revocable. Without deciding the question, I believe that the plaintiff is entitled to recover under either theory. For even if the trust is revocable, the evidence shows that Mr. Gross did nothing to indicate that the trust had been revoked at the time that the funds were seized. His use of the one passbook for security purposes may have been a partial revocation at the time it was pledged. But when the debt for which the book was pledged was paid, the trust was re-established. Thus, at the time the bank took the action to seize the funds, the trust was in effect and not revoked.

We come, then, to the third issue: Can the bank, as a creditor, reach the funds held by Isadore Gross, as trustee, for the payment of Mr. Gross' personal debts? The contention on this point is based upon the fact that where Totten trusts have been recognized, they have been said to be subject to the creditors of the settlor-trustee. There have been no cases cited in which this was allowed to be done by the summary action of a bank holding the funds.

■ However, this is one point upon which the Kansas legislature has spoken. K.S.A. 33–101 provides:

"33–101. Trusts. All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of

motive, as to all past, present or future creditors; but otherwise shall be valid and effective."

Thus, from the terms of the statute, a trust of personal property, as in this case, shall be valid and effective as to creditors unless it is "to the use of the person" making it. The question then becomes, what is meant by a trust "to the use of" the settlor.

■ In order to focus on this precise problem, it is necessary to set out the applicable facts. This trust was to be set up with Mr. and Mrs. Gross as trustees, for the benefit of Angelia Maria. Under the law of Totten trusts, the only power left in the settlor-trustee is one of revocation. Any use of the funds for the settlor's personal benefit, acts as a partial revocation, as to the amount of the funds affected. See In re Totten, supra. The Kansas Supreme Court has held, under the statute which preceded the present one, that the mere power of revocation did not make a trust "to the use" of the settlor. In re Estate of Morrison, supra. The change in the statutory language did not affect the language, "to the use of the person * * * making" the trust. See Kan.G.S.1949, § 33–101. The Supreme Court later, in denying a rehearing of Ackers v. First Nat'l Bank, 192 Kan. 471, 389 P.2d 1 (1964), stated that the *Morrison* case would not be authority for a holding against creditors under the new statute. However, the court there did not indicate what it would hold in that situation. The *Ackers* case (192 Kan. 319, 387 P.2d 840 (1964), rehearing denied, supra) involved a trust in which the grantor had reserved to himself not only the right of revocation, but also the right to instruct the trustee concerning the sale of assets, the right to any income the grantor wished, the right to amend, etc. The court held that the trust was valid as to all except creditors and the statutory rights of a surviving spouse, under K.S.A. 33–101 and 67–414.

As can be seen, that situation is considerably different from the one presented here. In the *Ackers* case, the settlor retained many rights. In the in-

stant case, the settlors may have had the power to revoke, but that is all. Any action taken with the funds, by necessity, follows the revocation, and removes the money from consideration as trust funds.

A further factual problem entering into this case is the position of the joint trustees. Since there are joint trustees, it would appear to be beyond the power of either to use the funds for his personal benefit, especially where the other trustee has no knowledge of the use or interest in the debts. Further, here the bank is not in the usual position of a "creditor" as that term is used in the statute, but is holding the funds for the plaintiff in a position of trust.

For these reasons, it appears that under the peculiar factual situation of this case, it is even more unlikely that the Kansas Supreme Court would hold that this is a trust "to the use of" Isadore Gross. Thus, under K.S.A. 33–101, the trust is valid and effective, even against creditors. It follows, then, that the bank acted wrongfully in taking the funds and the plaintiff is entitled to judgment against the bank. This is further buttressed by the doctrine in Kansas that "(p)ersons dealing with trustees ordinarily are required to know their powers." Fry v. McCormick, 170 Kan. 741, 744, 228 P.2d 727, 729 (1951). The bank is held to know that the unrevoked trust presented a situation in which it could not summarily take the funds and apply them to the debts of the trustee, Isadore Gross.

The fourth issue is whether the plaintiff is entitled to punitive damages. In view of my factual finding that there was no willful or wanton disregard of the plaintiff's rights, I hold that punitive damages are not allowable.

Returning to the nature of the trust, it has now been decided that if Kansas is to recognize the Totten trust doctrine, and if this trust falls within that doctrine, the Kansas law is that the creditor cannot reach the fund in this situation. Of course, if Kansas is to reject the Totten doctrine, the general rule

of the *Kilgore* case—i. e., without a reservation, the trust is irrevocable—would apply. However, as between the trustees and the beneficiary, the nature of the trust must be decided in order to direct the disposition of the funds. Whatever the legal effect of their actions, it is clear that the actual intent of the settlors was to create an irrevocable trust. As pointed out earlier, Mrs. Gross' actions were entirely consistent with this intention. The only action of Mr. Gross which was inconsistent, was the pledging of the savings accounts in Missouri as security for a debt. From Mr. Gross' testimony, the inference gleaned reveals that Mr. Gross felt he could pledge the funds as security without revoking the trust. (Tr. 54–61, 69–70.) However mistaken he was as to the legal effect of keeping the money to be used for security purposes, his stated intention was to preserve the money for the little girl. Thus, I hold that at least to this extent, the trust is irrevocable. The judgment paid will be set up in the irrevocable trust which was intended at the time this trust was established, and the money will be restricted to use for the education of Angelia Maria Gross.

The final issue to be decided is whether the bank should have judgment over against Isadore Gross. I have found as a matter of fact that Isadore Gross did owe the bank in excess of $10,000.00. Also, the bank could believe from the actions of Mr. Gross that he would exercise the reserve power (which he may or may not have had) to revoke the trust and use the founds against his debts to the bank. Thus, the bank should have the judgment over against Mr. Gross for the amount of the judgment entered in this suit.

The bank has asked for a further hearing in order to establish fraud on the part of Mr. Gross. I do not feel that any further evidence could arise under the circumstances of the case which could show any fraud in reference to this transaction. The bank had before it all of the passbooks and all of the information available to Mr. Gross. The defendant was in an equal, if not better position

than Mr. Gross, insofar as knowledge of the nature of the funds involved and the powers of Mr. Gross were concerned. It is also noted that the bank did not take these funds subsequent to a revocatory act by Mr. Gross. The funds were summarily seized when they were transferred from the Missouri savings and loan associations, and there was no opportunity given to Mr. Gross to come in and defraud the bank as to his intentions.

Thus, the judgment against Mr. Gross as third party defendant, in favor of the third party plaintiff, will not be based upon fraud, and will not be for a greater amount than the judgment against the defendant and in favor of the plaintiff.

## FINDINGS OF FACT

1. In September, 1962, Mr and Mrs. Gross transferred the accounts from their names as joint tenants to their names, in different forms, as trustees for Angelia. It was their intention then to create a trust for Angelia's college education and to provide her with educational opportunities comparable to those already provided for the other three children.

2. Mrs. Gross' intention was that the trust be irrevocable.

3. Mr. Gross used one of the passbooks on four occasions, once at the bank, as security for personal loans. These loans were paid without the security being used.

4. In January, 1964, the funds were transferred to the defendant bank, with the bank handling the mechanics of the transfer. The Grosses' intention was that the accounts be set up in the same form as in Missouri, and they relied on the bank to do this.

5. The amount of the funds transferred was $9,691.11.

6. The bank did not set up the trust accounts, but applied the money against debts owed by Mr. Gross to the bank.

This action was not known to the Grosses, nor did they consent to it.

7. The bank had actual knowledge of the trust nature of the funds, and Mr. Gross had taken no action to revoke the trust when the funds were seized.

8. Mr. Gross owed the bank in excess of $10,000.00.

9. By his dealings with the bank, Mr. Gross led the bank to believe that he would exercise a reserve power to revoke the trust. However, there was no fraudulent intent on the part of Mr. Gross. The bank had before it all of the passbooks and information available to Mr. Gross concerning the funds at the time of the transfer.

10. The actions of the bank were not malicious or fraudulent, nor were any of the actions taken with a reckless disregard of the rights of the minor plaintiff.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter and parties to this action.

2. A valid trust for the benefit of Angelia Maria Gross was established.

3. The bank was not entitled to seize the funds and the plaintiff should recover them from it.

4. The plaintiff cannot recover punitive damages.

5. Angelia Maria Gross is the equitable owner of the funds, and the amount recovered will be established in the irrevocable trust, to be used solely for her education.

6. The bank is entitled to judgment over against Isadore H. Gross, Jr. for the amount of the judgment against it.

7. Isadore H. Gross, Jr. did not defraud the bank.

Counsel will prepare and submit an appropriate order, including provision for the payment of the judgment in plaintiff's favor in such manner as to safeguard its use for the benefit of the minor plaintiff.