(733 P.2d 834)
No. 59,675

In the Matter of the Estate of NONA E. MORTON, deceased.

Opinion filed March 5, 1987.

*Walker A. Hendrix,* of Hendrix & Clark, of Ottawa, for the appellants.

*Richard O. Skoog,* of Skoog & Latimer, of Ottawa, for the appellees.

Before BRISCOE, P.J., REES and BRAZIL, JJ.

BRISCOE, J.: This is an appeal from a probate case in which the district court ruled the proceeds of decedent's savings accounts passed to appellees, Mary Moore and Ronnie Moore, as beneficiaries of a *Totten* trust. Appellants, the residuary legatees of decedent's will, contend appellees should not receive these proceeds because, under the facts of this case, no valid trust was created. Appellants also contend appellees cannot receive as testamentary devisees. In support of this contention, appellants

argue the signature cards upon which appellees rely do not comply with the Statute of Wills or fall within K.S.A. 1986 Supp. 17-5828, the "payable upon death" exception to the Statute of Wills. We agree with appellants and reverse the district court.

While living, decedent Nona Morton deposited money into two savings accounts at Franklin Savings Association. Both signature cards were signed by Nona Morton and were titled "Discretionary Revocable Trust Agreement." The signature cards named Nona Morton as both grantor and trustee and Mary Moore and Ronnie Moore as beneficiaries. Under the terms of the accounts as provided by the signature cards, Nona Morton retained the power to revoke the accounts in full or in part. Upon Nona Morton's death, the proceeds remaining in the accounts were made payable to the named beneficiaries. Over a period of time, Nona Morton transferred the original two accounts to new accounts and, later, her conservator, in order to obtain higher interest rates, transferred the moneys to additional accounts which also included certificates of deposit. The signature card forms of the accounts remained constant except on one occasion when the savings association used a different form. This was later corrected by Nona Morton's conservator in order to preserve what he believed was Nona Morton's original intent. During her life, Nona Morton, acting individually or through her conservator, retained control of the accounts. Only her moneys were deposited in the accounts, and interest accumulated was transferred as needed to her checking account to meet her expenses or to make other distributions.

During the probate of Nona Morton's estate, these accounts at Franklin Savings Association became the subject of dispute. Appellants, the residuary legatees of Nona Morton's will, argued that the accounts were invalid *Totten* trusts and, therefore, the proceeds of the accounts remained property of the estate to be distributed under the residuary clause of Nona Morton's will. Appellees Mary Moore and Ronnie Moore argued that the accounts were valid *Totten* trusts and the proceeds were payable to them, the named beneficiaries. The district court ruled for the appellees and stated the following in support of its conclusion that the accounts were valid *Totten* trusts under Kansas law:

"Kansas Courts have not ruled on the validity of 'Totten Trusts.' However, in

*Gross v. Douglass State Bank*, 261 F. Supp. 1002 (D. Kan. 1965), the United States District Court for the District of Kansas found a 'Totten Trust' to be valid. In *Gross*, the parents established trust accounts in a savings and loan for their three daughters' education. The Court relied upon the decision in *Shumway v. Shumway*, 141 Kan. 835 (1935).

"Viewed from the standpoint of what is accomplished by a 'Totten Trust' it is easy to determine that the end result is the same as 'Pay on Death' accounts. In each instance, the depositor or settlor can withdraw any portion or all of the funds in the account. Also, in each instance it can be said that the benefit vests at the time the account is created. However, the amount of the benefit, i.e. the balance in the account, cannot be bestowed upon the named beneficiary until the death of the depositor or settlor. The two 'smell the same' but the language creating each is different. This is somewhat similar to 'silent' Calvin Coolidge's will and today's more elaborate method of saying the same and accomplishing the same result.

"In 1977, the Kansas Legislature legalized the use of 'Pay on Death' accounts. (K.S.A. 9-1215.) This action made these accounts non testamentary and removed them from the Kansas Statute of Wills. Following the reasoning of the legislature as to these type of accounts and the decision of the United States District Court in *Gross*, I am of the opinion that 'Totten Trusts' are valid express trusts under Kansas law."

Appellants argue on appeal that the district court erred in its conclusion that *Totten* trusts are valid in Kansas. On appeal, appellees "adjust" their position somewhat and argue that the district court's result was correct, but its conclusion that the accounts were *Totten* trusts was erroneous. Appellees now maintain the accounts were in fact "payable on death" accounts, not *Totten* trusts. As a general rule, we do not consider issues on appeal which have not been first presented to the trial court. *Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986). However, in this case we will address whether the accounts in question were valid "payable on death" accounts because the court inferentially considered this option in reaching its conclusion.

With that said, we reject appellees' argument that the accounts were "payable on death" accounts rather than *Totten* trusts. A *Totten* trust is created when an individual deposits funds in a bank or savings account in trust for another. The depositor is named trustee and retains the power to revoke the trust and the right to use both principle and income. The trust beneficiary is entitled only to those funds remaining upon the depositor's death. The term *"Totten* trust" is taken from the case of *Matter*

*of Totten*, 179 N.Y. 112, 71 N.E. 748 (1904). *Totten* trusts are also known as savings account trusts or tentative trusts. See generally IA Scott on Trusts §§ 58-58.6 (4th ed. 1987); Bogert, Trusts & Trustees § 47 (2d ed. rev. 1984). Although the effect of a "payable on death" account is identical to that of a *Totten* trust, a "payable on death" account is based on contract rather than trust principles. In a "payable on death" account, the bank or savings institution, under the terms of its contract with the depositor, agrees to pay the proceeds remaining in the account to a named beneficiary upon the depositor's death. The depositor retains complete control of the account during the depositor's lifetime. Note, *Will Substitutes in Kansas*, 23 Washburn L.J. 132, 147 (1983). See K.S.A. 1986 Supp. 9-1215; K.S.A. 1986 Supp. 17-5828; *Truax v. Southwestern College*, 214 Kan. 873, 522 P.2d 412 (1974).

Appellees in the present case argue the accounts in question were "payable on death" accounts rather than *Totten* trusts because "payable on death" accounts are recognized by statute. K.S.A. 1986 Supp. 17-5828 provides:

"An individual adult or minor, hereinafter referred to as the owner, may enter into a written contract with any savings and loan association located in this state providing that the balance of the owner's deposit account, or the balance of the owner's legal share of a deposit account, at the time of death of the owner shall be made payable on the death of the owner to one or more persons or, if the persons predecease the owner, to another person or persons, hereafter referred to as the beneficiary or beneficiaries. If any beneficiary is a minor at the time the account, or any portion of the account, becomes payable to the beneficiary and the balance, or portion of the balance, exceeds the amount specified by K.S.A. 59-3003 and amendments thereto, the moneys shall be payable only to a conservator of the minor beneficiary.

"Transfers pursuant to this section shall not be considered testamentary or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated.

"Every contract authorized by this section shall be considered to contain a right on the part of the owner during the owner's lifetime both to withdraw funds on deposit in the account in the manner provided in the contract, in whole or in part, as though no beneficiary has been named, and to change the designation of beneficiary. The interest of the beneficiary shall be considered not to vest until the death of the owner.

"No change in the designation of the beneficiary shall be valid unless executed in the form and manner prescribed by the savings and loan association and delivered to the savings and loan association prior to the death of the owner.

"For the purposes of this section, the balance of the owner's deposit account or the balance of the owner's legal share of a deposit account shall not be construed to include any portion of the account which under the law of joint tenancy is the property of another joint tenant of the account upon the death of the owner.

"As used in this section, 'person' means any individual, individual or corporate fiduciary or nonprofit religious or charitable organization as defined by K.S.A. 79-4701 and amendments thereto."

A similar statute allows "payable on death" accounts to be established at banks. K.S.A. 1986 Supp. 9-1215. There is no evidence, however, to support a finding that the decedent in the present case intended to create "payable on death" accounts. The only evidence of decedent's intent is contrary to the creation of "payable on death" accounts. The accounts were established using trust language, and at a time prior to the statutes recognizing "payable on death" accounts. All the surrounding facts and circumstances support the district court's conclusion that the accounts were *Totten* trusts.

The real issue to be determined in this case is whether *Totten* trusts are valid in Kansas. This is an issue of first impression, although it has been the subject of considerable speculation. See *Gross v. Douglass State Bank*, 261 F. Supp. 1002 (D. Kan. 1965); Note, *Will Substitutes in Kansas*, 23 Washburn L.J. at 153-57; Comment, *Trusts: Totten Trusts and the Viability of P.O.D. Dispositions as Nontestamentary*, 14 Washburn L.J. 194 (1975); Comment, *Totten Trusts in Kansas*, 9 Kan. L. Rev. 46 (1960). After reviewing this and other commentary, we conclude that the *Totten* trusts in the present case are invalid.

First, *Totten* trusts fail to satisfy traditional trust principles. Under Kansas law, three elements are required to create an express trust: "an explicit declaration and intention to create a trust, definite property or subject matter of the trust, and the acceptance and handling of the subject matter by the trustee as a trust." *Shumway v. Shumway*, 141 Kan. 835, Syl., 44 P.2d 247 (1935). *Totten* trusts are problematic in that there is usually no evidence, other than the language of the instrument, to establish trust intent. We have previously held that "trust intent cannot be resolved solely from a self-serving declaration in the trust instrument, but instead must be viewed and decided in light of all the attending facts and circumstances in the case." *Pizel v. Pizel*, 7 Kan. App. 2d 388, 393-94, 643 P.2d 1094, *rev. denied* 231 Kan.

801 (1982). The facts and circumstances attending Nona Morton's dealings with these accounts contradict her declaration of trust intent on the signature cards. Decedent did not deal with the subject property to the benefit of the named beneficiaries. Instead, she or her conservator always controlled the movement of moneys into and out of the accounts, and always treated the accounts as her own to be used for her needs and benefit. Jurisdictions which permit *Totten* trusts have been required to modify traditional trust principles to permit intent to be inferred from the mere language of the instrument. See, *e.g., Blair, Exec. v. Haas,* 215 Md. 105, 137 A.2d 145 (1957); *Malley v. Malley,* 69 R.I. 407, 34 A.2d 761 (1943); *Tyree v. Ortiz,* 127 Vt. 177, 243 A.2d 774 (1968). See Bogert, Trusts & Trustees § 47.

Even if we were to permit trust intent to be inferred, there still appears to be an absence of an actual trust relationship. By retaining both the power to revoke the trust *and* the power to use both principle and income, the trust relationship appears illusory and creates the opportunity for fraud. See *Herd v. Chambers,* 158 Kan. 614, 149 P.2d 583 (1944); Comment, *Validity of Revocable Trusts in Kansas,* 11 Kan. L. Rev. 375 (1963). Jurisdictions which approve *Totten* trusts have been required to also modify traditional trust principles in order to avoid this problem. See IA Scott on Trusts § 58.3; Bogert, Trusts & Trustees § 47. We note that retaining a power to revoke does not in itself invalidate a trust. See *In re Estate of Morrison,* 189 Kan. 704, 371 P.2d 171 (1962).

Second, in addition to their shortcomings in satisfying traditional trust principles, we conclude that *Totten* trusts violate the Kansas Statute of Wills if not executed with the required formalities. The Kansas Statute of Wills, K.S.A. 59-606, provides:

"Every will, except an oral will as provided in K.S.A. 59-608, shall be in writing, and signed at the end thereof by the party making the same, or by some other person in the presence and by the express direction of the testator and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard the testator acknowledge the same."

Since *Totten* trusts are testamentary in nature, instruments creating *Totten* trusts are required to be executed according to this statute. We base this conclusion on the case of *Truax v. Southwestern College,* 214 Kan. 873, which preceded the enact-

ment of K.S.A. 9-1215 and 17-5828. Under the facts of *Truax*, the accounts at issue bore only a "payable on death" notation. No trust language was present. The Kansas Supreme Court held in that case that "payable on death" accounts were testamentary and were required to be executed as provided by the Kansas Statute of Wills. In reaching this conclusion, the court stated:

" '. . . [T]he transfer of a bank account, to take effect at the death of the depositor, who retains control during his life, is testamentary in character and void if not executed as a will, whether the intention of the depositor is to provide for a trust or to make a direct gift.' " 214 Kan. at 883.

Because *Totten* trusts and "payable on death" accounts have the same testamentary effect, we are compelled to follow the same rationale and require *Totten* trusts to also comply with the Statute of Wills.

The fact that the legislature created an exception to the Statute of Wills for "payable on death" accounts after the *Truax* decision does not validate the use of *Totten* trusts. If the legislature desires to allow *Totten* trusts, it must do so with a specific exception. Absent a legislatively created exception to the Statute of Wills to include *Totten* trusts, we cannot judicially legislate to expand the statutory exception for "payable on death" accounts to include *Totten* trusts. Although the policy reasons for the creation of such an exception are equally as strong as those urged for the adoption of an exception for the "payable on death" account, these urgings are more properly made to the legislature, not to the courts.

The *Totten* trusts in the present case were not witnessed as required by the Statute of Wills and were therefore invalid. The district court's distribution of the proceeds of the accounts to the named beneficiaries was therefore in error and must be set aside.

Reversed and remanded to the district court with directions to distribute the proceeds of the accounts to appellants, the residuary legatees under Nona Morton's will.